**STATE of Minnesota, Appellant,**

v.

**William Edward MARHOUN,
Respondent.**

**No. 82–611.**

Supreme Court of Minnesota.

Aug. 24, 1982.

Rehearing Denied Oct. 5, 1982.

---

Warren Spannaus, Atty. Gen., Gary Hansen and Jerry S. Anderson, Sp. Asst. Attys. Gen., St. Paul, James R. Clifford, County Atty., Center City, for appellant.

William T. Tilton, St. Paul, Thomas L. Hoch, Ann T. Laughlin, Minneapolis, for respondent.

TODD, Justice.

Defendant has been indicted by a Chisago County grand jury of murder in the first degree, criminal sexual conduct in the first and second degree, and kidnapping. The state, pursuant to Minn.R.Crim.P. 29.03, subd. 1 (1980), appeals from the pretrial omnibus hearing order that (1) suppressed one of defendant's statements to police on the ground that no *Miranda* warning was given, (2) suppressed evidence seized in a warranted search of defendant's automobile, and (3) suppressed, on due process grounds, the eyewitness identification testimony of a person who claims she saw defendant with the victim shortly before the homicide is believed to have occurred. Acting pursuant to Rule 29.03, subd. 3, defendant has filed a cross-appeal seeking review of that part of the district court's order which denied a motion to dismiss the charges on the ground of insufficient evidence to indict.

On the evening of July 15, 1981, defendant, who is from St. Paul, left a Duluth bar with a 30-year-old woman, who he met in the bar and persuaded to accompany him to see a sailboat at a nearby marina. Later defendant and this woman were observed in a local VFW club.

The woman never returned to her car that night or to her trailer and 2 days later the bartender at the bar filed a missing person report.

Police investigation resulted in the discovery of defendant's name and on July 26 a Duluth police officer drove to St. Paul and talked with defendant, who voluntarily came to the St. Paul Police Department. Defendant denied knowing what had happened to the woman, saying that he returned to the bar and dropped her off near her car after they left the VFW club.

Two days later the woman's decomposed body was found near a county road in Chisago County just a short distance west of I–35. The body had been bound around the torso using nylon rope tied in sailor's knots. The medical examiner could not determine the cause of death but opined that homicidal violence of an unknown type had been

used and that sexual misconduct had been involved.

On the 30th the Duluth police officer again drove to St. Paul and called defendant, asking him if he would talk with him at the Bureau of Criminal Apprehension offices. Defendant, knowing that he did not have to talk with the officer, agreed and met the officer at the offices a short time later. The defendant's wife, who accompanied defendant, was told that she should wait in a separate room.

Defendant continued to deny his guilt in a session which lasted over 1½ hours. After the session his car was impounded and he and his wife were given a ride home.

A warranted search of the car was obtained the next day and arguably incriminating evidence was found in the search.

Police also obtained warrants to search other property belonging to defendant and more evidence was seized.

On August 19, police, who had been interviewing employees of restaurants, gas stations, and motels along the freeway, talked with an employee of a restaurant in Hinckley who identified pictures of defendant and the victim, saying that they had been in the restaurant late on the 15th.

■ Without detailing all the evidence adduced at the grand jury hearing, we agree with the district court that the evidence was sufficient to support the indictments.

However, we believe that the district court erred in suppressing the statement defendant gave on the 30th, the evidence seized in the search of defendant's car, and the identification testimony of the restaurant employee.

■ Although the interrogation of defendant on the evening of the 30th occurred at B.C.A. offices, defendant came there voluntarily, knowing that he was under no legal compulsion to do so, just as on the 26th he had voluntarily submitted to questioning at the St. Paul Police Department. Defendant was also told in the middle of the interrogation that he was free to leave, but he chose not to do so. Under the circumstances, we conclude that the questioning was noncustodial and that therefore no *Miranda* warning was required. *Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977), is closely in point.[1]

The affidavit in support of the warrant to search defendant's car[2] did not say how

---

1. We do not mean to imply by our ruling that the entire transcript of defendant's statement on the 30th is admissible at trial. In *State v. Hjerstrom*, 287 N.W.2d 625, 627 (Minn.1979), we stated that "[A]ssuming a proper objection, immaterial and irrelevant portions of an extrajudicial interrogation of a defendant should generally not be received in evidence."

2. The affidavit stated in relevant part:
   Your Affiant Roger KASKE, is a duly appointed Deputy Sheriff for the County of Chisago and is presently charged with the investigation of the death of one Minerva Linan JONES. That this investigation is being jointly conducted with the police Department, City of Duluth, Minnesota and the Minnesota Bureau of Criminal Apprehension, and the Saint Paul Police Department.
   That your Affiant has been in contact with Duluth Police Officers John Campbell and Dennis Lepak who are presently assigned to the Duluth Police Detective Bureau. Officers Campbell and Lepak were assigned to investigate a missing persons complaint regarding Ms Minerva Linen JONES, 2130 Miller Trunk Highway, Lot 833, Duluth, Minnesota. In-

vestigation disclosed that JONES' vehicle had been abandoned with her dog inside said vehicle in the parking lot adjacent to the rear of the Red Lion Bar, 220 East Superior Street Duluth, Minnesota. Further that the vehicle had been there from a period covering approximately Wednesday, July 15, 1981, 4:00 PM through July 17, 1981, 12:47 PM. That it was further learned that JONES left the Red Lion Bar in the company of a white male later identified as Mr. William Edward MARHOUN, 2173 Selby Avenue, St. Paul, Minnesota. Witnesses described the clothing worn by JONES on July 15, 1981, as a blue pullover top and blue jeans. It was also belived she was carrying a purse being brown or tan in color and described further as a "clutch" type bag.
   That your affiant has been advised that Officer John Campbell conducted an interview of MARHOUN on July 26, 1981 at approximately 12:30 PM at the St. Paul Police Department. MARHOUN stated that he met JONES at the Red Lion Bar; that JONES was seemingly depressed and he struck up a conversation which ultimately turned to sailing and sail boats. Ultimately MARHOUN left

police learned that the victim had disappeared or who saw her leave the bar with defendant on the 15th, but the affidavit established that Chisago County authorities found a decomposed body that was identified by the medical experts as the victim's body and that the affidavit established that defendant himself admitted to police that he had left the bar with the victim on the 15th. Although the affidavit does not establish how police learned that the victim's car had been abandoned by the bar on the 15th, the affidavit does reveal that somehow police obtained this information and that someone had filed a missing person report. Even information which does not meet the *Aguilar* test may sometimes be relied upon in connection with other information that does meet the test. *State v. Siegfried*, 274 N.W.2d 113 (Minn.1978). We believe that this is such a case, given the fact that police had learned, presumably from the motel manager, that defendant did not return to the motel until around 7 a. m. on the morning of the 16th. Police also

learned from defendant that he was interested in sailing. The affiant knew, from his military background, that the knots used in binding the victim were sailing knots.

In summary, the affidavit established that the Chisago County authorities had found a dead body of a missing woman, that she had been bound using sailor's knots, that on the 15th defendant had left a Duluth bar with the victim to show her some boats, and that he was gone all night and did not return to his motel room until 7 a. m. the next day. Bearing in mind that we are dealing with probable cause, not proof beyond a reasonable doubt, we believe that the affidavit, while it could have been better drafted, contained sufficient reliable information to establish probable cause to search defendant's car.

The final issue is the reliability of the eyewitness identification testimony. It is one thing to expect police to show an

the Red Lion Bar with JONES in his vehicle and went to look at a sail boat. MARHOUN ultimately brought JONES back to the Red Lion Bar and just prior to dropping her off JONES became sick in MARHOUN'S car a 1981 Chevrolet, Citation rust in color, bearing Minnesota License FET–596. MARHOUN alleges that JONES was clad in slacks, a top and small purse that was very full. Further investigation disclosed that JONES carried personal identification in said purse as well as credit cards for the J & J Casting Company, Hibbing, Minnesota. Subsequent to the interview of MARHOUN it was ascertained MARHOUN didinot return to his motel until approximately 7:00 AM the following morning. MARHOUN stated he had driven around the Duluth Superior area all night; further no accounting could be made for his time that evening. Media appeals failed to produce witnesses that saw or had information as to the whereabouts of JONES following her being in the company of MARHOUN.

On July 28, 1981, at approximately 12:40 PM, the CHIsago County Sheriff received a citizen complaint that a badly decomposed body was found on Chisago County Road 10, approximately 1 and ½ miles west of I–35W. The scene where the body was discovered was processed by the Hennepin County Sheriff's Lab, the Chisago County Sheriffs Office and The Bureau of Criminal Apprehension. The body was removed to the Hennepin County Medical Examiners Office where it

was identified to be the remains of Minerva LinanaJONES by Doctor Norman Holte, Chief of Dentistry, Hennepin County Medical Center utilizing x-rays and exhisting dental records. It should be noted that the body of JONES was bound by cord and other rope/cord bindings were found on the scene some of which bore knots your affiant believes to be sailing knots. Missing from the scene where the body was discovered were slacks, underpants, shoes and purse.

The affiant has knowledge of types of knots from a military background.

On July 30, 1981 MARHOUN appeared voluntarily at the Minnesota Bureau of Criminal Apprehension, St. Paul, for a second interview. Subsequent to the interview MARHOUNS vehicle was impounded by BCA Agent Paul N. Gerber and your affiant sealed said vehicle which is in a secure impound area pending the granting of a court order authorizing a search of said vehicle. Further that the search of said vehicle is to be conducted with the assistance of and in the garage of the Crime Laboratory of the Minnesota Bureau of Criminal Apprehension, 1246 University Avenue, St. Paul, Minnesota.

Your affiant has reason to belive and does believe MARHOUNS vehicle to contain items of evidentury value, some of which will be microscopic in size which relate to the disappearance and death of Minerva JONES.

array of pictures of look-alikes to people who they know have witnessed a crime. In this case, however, the police were unaware of whether there were any witnesses who may have seen defendant and the victim together somewhere along I–35 on the way to Chisago County on the evening of the 15th or morning of the 16th. Just as it is proper for police to provide the media with a composite drawing of a person who has committed a crime, it is also proper for police to take a picture of a person whom they strongly suspect of having committed a crime and show it to people who might have seen the person in the area of the crime in the company of the victim.

We agree that such a procedure is suggestive and that when a witness is found in this way courts must be extremely careful to determine if the identification is reliable. The proper test for making such a determination is that provided in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977), and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). That test is whether after examining all the relevant factors it may be said that the suggestive identification procedures created a "very substantial likelihood of irreparable misidentification."

Applying the legal test to the facts in this case, we conclude that the identification testimony of the restaurant employee is reliable and should be admitted at trial.

Pursuant to Minn.R.Crim.P. 29.03, subd. 2(8), defendant is awarded attorney fees in the amount of $400.

Affirmed in part; reversed in part; remanded for trial.