**STATE of Minnesota, petitioner, Appellant,**

**v.**

**Derrick TAYLOR, Respondent.**

No. CX–98–445.

Supreme Court of Minnesota.

May 6, 1999.

---

William E. McGee, Fourth District Public Defender, Warren R. Sagstuen, Asst. Public Defender, Minneapolis, for respondent.

## OPINION

PAGE, Justice.

Respondent Derrick Taylor, also known as "Bigelow," was charged by complaint with third-degree criminal sexual conduct in violation of Minn.Stat. §§ 609.344, subd. 1(b) (1998); 609.101, subd. 2 (1998); and 609.346, subd. 5 (1998), for the alleged sexual assault of a 13–year–old female named M.B. in the laundry room of her apartment building in south Minneapolis. Before trial, Taylor moved to suppress M.B.'s identification of him as her assailant. After a *Rasmussen* hearing was held on the motion, the trial court suppressed both M.B.'s pretrial identification of Taylor and any in-court identification M.B. might make. As a result, the trial court dismissed the complaint for lack of probable cause. Suppression of M.B.'s identification of Taylor was based on the trial court's finding that the show-up procedure [1] used by the police was unreliable in that it was impermissibly suggestive and created a substantial likelihood of irreparable misidentification. The state then moved to amend the complaint and to re-open the *Rasmussen* hearing in order to present additional evidence. The trial court granted the state's motions. After receiving the additional evidence at the re-opened hearing, the trial court affirmed its earlier decision and dismissed the amended complaint.

The court of appeals affirmed the trial court's suppression of M.B.'s pretrial iden-

Michael A. Hatch, Atty. Gen., St. Paul, Michael O. Freeman, Hennepin County Atty., Donna J. Wolfson, Asst. County Atty., Minneapolis, for appellant.

1.  A show-up procedure is a "one-to-one confrontation between suspect and witness to crime. A type of pretrial identification procedure in which a suspect is confronted by or exposed to the victim or a witness to a crime." Black's Law Dictionary 962 (6th ed.1990).

tification of Taylor,[2] but reversed the trial court's dismissal of the amended complaint and remanded for trial.[3] We conclude that the trial court's suppression of M.B.'s identification of Taylor at the time of the show-up procedure was error because the show-up procedure used by the police did not unfairly single out Taylor for identification, nor did it cause a substantial likelihood of irreparable misidentification. Therefore, we reverse that part of the court of appeals' decision affirming the trial court's suppression of M.B.'s pretrial identification of Taylor.[4]

In opposing the motion to suppress M.B.'s identification of Taylor, the state, through the testimony of one of the arresting police officers, made the following assertions. Kimberly Finnie is M.B.'s sister and legal guardian. On November 9, 1997, the Minneapolis Police Department received a telephone call from Finnie. Finnie told the officers who responded to the call that her sister, M.B., had been sexually assaulted in the basement laundry room of their building while M.B. was transferring laundry from a washing machine to a dryer. Finnie told the officers that M.B.'s assailant was a man who went by the name "Bigelow" and who lived in their building.

Finnie directed the officers to "Bigelow's" apartment. At the apartment, the officers knocked on the door and Taylor and a woman answered. The officers asked if "Bigelow" was there and Taylor responded "that's me," at which point he was handcuffed and taken into custody. Finnie confirmed for the officers that Taylor was the man named "Bigelow" who M.B. had said was her assailant. The officers then, for purposes of identification, transported Taylor to a duplex in south

Minneapolis where M.B. was located. At the duplex, Taylor, still in handcuffs, was removed from the patrol car and made to turn around so that M.B., who by this time was with a police sergeant and Finnie, could view him from a second floor window. M.B., appearing "very certain," confirmed that Taylor was the man she knew as "Bigelow," and that he had sexually assaulted her.

Based on this evidence, the trial court found that the procedure the police used for M.B.'s identification of Taylor was an impermissibly suggestive one-person show-up because, among other things, Taylor was handcuffed. The trial court also found that there was a substantial likelihood of misidentification. In doing so, the trial court noted that the state failed to present evidence concerning M.B.'s ability to view her assailant, the length of time she had to view her assailant, her degree of attention at the time, or how she knew "Bigelow." As a result of finding that the show-up procedure was impermissibly suggestive creating a substantial likelihood of irreparable misidentification, the trial court dismissed the complaint against Taylor.

At the re-opened *Rasmussen* hearing, the state offered evidence in the form of testimony from a police officer who investigated the alleged sexual assault. The police officer testified that M.B. told him that while she was transferring laundry from the washing machine to the dryer in the basement laundry room of the apartment building where she lived, a man came up behind her and told her to be quiet. The man proceeded to unbutton M.B.'s pants, pull them down to her knees, and insert his fingers into her vagina. After a matter of minutes, the man removed his hand and

2. While the court of appeals affirmed the trial court's "suppression of the evidence related to the show-up," it did not address the trial court's suppression of any in-court identification that M.B. might make at trial. *See State v. Taylor*, No. CX–98–445, 1998 WL 644266, at *3 (Minn.App. Sept.22, 1998).

3. *Id.* at *4.

4. Because we conclude that it was error to suppress M.B.'s pretrial identification of Taylor and because after reviewing the record we can find no other basis to suppress any in-court identification that M.B. might make, we also conclude that it was error for the trial court to have suppressed any in-court identification of Taylor by M.B.

M.B. immediately turned and ran. In the process of turning to run, she saw the man's face, and recognized him as "Bigelow," a man she had been introduced to some weeks before, and whom she had seen around her apartment building and neighborhood at least 10 times. M.B. did not immediately report the sexual assault.

In interviews with M.B.'s friend, J.P., and Finnie, the officer learned that shortly after the alleged assault, M.B. told J.P. that "Denise Ewing's brother," "Bigelow," had come up behind her and raped her in the laundry room of their building and that J.P. told Finnie what happened. When confronted by Finnie, M.B. confirmed that "Bigelow" had sexually assaulted her. Having confronted M.B., Finnie called the police on November 9.

After hearing the officer's testimony, the trial court dismissed the amended complaint again finding that the show-up procedure was impermissibly suggestive and that it created a substantial likelihood of misidentification. In doing so, the trial court noted several factors: there was no police report; there was no description of the assailant; it was not clear how the date of the incident was actually determined; M.B. had seen Taylor in the past but never spoke with him; M.B. only had a fleeting glance of her assailant; M.B. operates on an intellectual level of an eight year old, not a thirteen year old; and the name "Bigelow" was first mentioned by Finnie rather than by M.B.

█ In this appeal, we are asked to decide whether the suppression of M.B.'s pretrial and in-court identification of Taylor as her assailant was proper. "[W]hen reviewing a pretrial order suppressing evidence where the facts are not in dispute and the trial court's decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed."[5]

█ When determining the admissibility of identification testimony, the reliability of the identification is critical.[6] If the techniques utilized by the police in obtaining the identification are tainted by suggestion, the result may be irreparable misidentification.[7] When determining whether a pretrial identification must be suppressed, we apply a two-part test.[8] "The first inquiry focuses on whether the procedure was unnecessarily suggestive."[9] Included in that inquiry is "whether the defendant was *unfairly* singled out for identification."[10] Ultimately, the concern is whether the procedure used by the police influenced the witness identification of the defendant.

█ If the procedure is found to be unnecessarily suggestive, the court must then determine under the "totality of the circumstances" whether the identification created "a very substantial likelihood of irreparable misidentification."[11] However, "if the totality of the circumstances shows the witness' identification has an adequate independent origin, it is considered to be reliable despite the suggestive procedure."[12] We have held that a one-person show-up is not unnecessarily suggestive

**5.** *State v. Othoudt*, 482 N.W.2d 218, 221 (Minn.1992).

**6.** *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977).

**7.** *See People v. Rodriguez*, 79 N.Y.2d 445, 583 N.Y.S.2d 814, 593 N.E.2d 268, 270–71 (1992).

**8.** *State v. Ostrem*, 535 N.W.2d 916, 921 (Minn. 1995) (citing *Simmons v. United States*, 390 U.S. 377, 381, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968)).

**9.** *Id.* (citing *State v. Marhoun*, 323 N.W.2d 729, 732 (Minn.1982)).

**10.** *Id.* (citing *Simmons*, 390 U.S. at 383, 88 S.Ct. 967) (emphasis added).

**11.** *Simmons*, 390 U.S. at 384, 88 S.Ct. 967; *Ostrem*, 535 N.W.2d at 921.

**12.** *Ostrem*, 535 N.W.2d at 921 (citing *Manson*, 432 U.S. at 116, 97 S.Ct. 2243).

per se.[13] Moreover, we have held on at least one occasion that an unnecessarily suggestive identification procedure did not cause a "substantial likelihood of misidentification" because it was merely confirmatory.[14]

■ Having independently reviewed the facts of this case, we conclude that it was error to suppress M.B.'s pretrial identification of Taylor. While a one-person show-up is by its very nature suggestive, the question we must answer is whether the show-up procedure used here was unnecessarily suggestive. It was not. This is not a case where the police singled Taylor out from the general population based on a description given to them by a victim, and then proceeded to present him to the victim, in handcuffs, for identification in a one-person show-up. The use of a one-person show-up under those circumstances would be unnecessarily suggestive because of the potential for the show-up procedure, by itself, to influence the identification.[15] Rather, the record here reveals that on two occasions before the show-up took place, M.B. singled Taylor out by name as her assailant: once in a conversation with J.P. and once in a conversation with Finnie. M.B. singled him out by name because at the time the sexual assault occurred, she recognized her assailant as "Bigelow," a man whom she had been introduced to before and who she had seen around her apartment building and neighborhood at least ten times. Therefore there is little, if any, danger that the show-up procedure influenced M.B.'s identification of Taylor.[16] The primary information to be learned from the show-up was whether Taylor, who acknowledged going by the nickname "Bigelow," was in fact the same "Bigelow" that M.B. claimed had sexually assaulted her. Use of the show-up procedure allowed the police to quickly make that determination. Had Taylor been the wrong "Bigelow," the police would have been in the position to release him from custody without delay.

Because the show-up procedure used to identify Taylor was not unnecessarily suggestive, we remand to the trial court for proceedings consistent with this opinion.

Affirmed in part, reversed in part and remanded.

---

13. *State v. Griffin*, 336 N.W.2d 519, 524 (Minn.1983) (stating that one-person show-ups are a permissible form of identification if no "very substantial likelihood of irreparable misidentification" exists).

14. *See State v. Darveaux*, 318 N.W.2d 44, 47–48 (Minn.1982) (stating that "because the physical lineup was merely confirmatory, we find that it did not create a substantial likelihood of misidentification").

15. *Cf. Darveaux*, 318 N.W.2d at 47 (four-man physical line up was unduly suggestive where defendant was only man in lineup whose photograph had been shown to eyewitnesses, and suspect was described as having limp and defendant was only man in lineup who limped).

16. We note that in supporting its decision to suppress M.B.'s identification, the trial court appeared to focus, at least in part, on the issue of M.B.'s credibility as a witness as opposed to whether or not the show-up procedure used by the police produced a reliable identification. While witness credibility may be evaluated by the trial court when deciding whether there is "probable cause to believe that the defendant committed the offense charged," *see* Minn. R.Crim. P. Rule 11.03, that is a separate and distinct issue from the determination of whether the show-up procedure produced a reliable identification. The trial court's decision to dismiss the complaint is based on the show-up procedure not on a lack of probable cause to believe that Taylor committed the offense charged. If there is probable cause to support the charged offense, as we conclude there was here, witness credibility is a question for the trier of fact. *See, e.g., State v. Bowles*, 530 N.W.2d 521, 533 (Minn.1995) (witness credibility is an issue for the jury).