STATE of Minnesota, Respondent,

v.

James Edward ANDERSON, Appellant.

No. C1–01–930.

Court of Appeals of Minnesota.

March 19, 2002.

---

Mike Hatch, Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Susan K. Maki, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by LANSING, Presiding Judge, RANDALL, Judge, and KLAPHAKE, Judge.

## OPINION

R.A. RANDALL, Judge.

Appellant challenges his conviction for second-degree burglary, arguing that the show-up identification procedure was unnecessarily suggestive because at trial the officer who conducted the procedure testified that he told the eyewitness appellant

matched the witnesses' earlier description of the suspect. This testimony contradicted the officer's pretrial-hearing testimony. We reverse and remand.

## FACTS

In September 2000, the Minneapolis Police Department received a 911 call reporting a burglary in a Minneapolis neighborhood. An eyewitness told the 911 operator that he had seen two African American men, whom he did not recognize and suspected to be burglars, leaving his neighbor's house. The eyewitness stated that one man was wearing a jersey with orange stripes while the other, who was approximately 5′10″ with an afro, was wearing a dark jacket and dark pants. He also reported that both men were carrying black or silver garbage bags.

Officers Patrick McMahon and Walter Swanson heard the broadcast of the reported burglary and drove to the area. While en route, they spotted an African American male who matched the eyewitness's description of one of the men a few blocks from the burglarized residence. The man, later identified as appellant James Edward Anderson, was wearing a dark denim jacket with matching pants and carrying a silver garbage bag that contained computer equipment. The officers arrested appellant and drove him back to the scene for a show-up. The eyewitness identified appellant as one of the men he had seen leaving his neighbor's house. The eyewitness's identification was based mainly on appellant's clothing. The victim later identified the computer equipment that was in appellant's possession as belonging to her.

Appellant was charged with second-degree burglary. Before trial, the district court denied appellant's motion to suppress the show-up identification, which appellant argued was unnecessarily suggestive. In court, the eyewitness was unable to identify appellant. The district court allowed the jury to hear testimony concerning the show-up identification. The jury found appellant guilty of second-degree burglary. Appellant challenges the district court's denial of his pretrial motion to suppress evidence of the out-of-court show-up identification.

## ISSUE

Did the arresting officer's statements to the eyewitness before the show-up cause the identification to be so impermissibly suggestive as to give rise to a substantial likelihood of misidentification?

## ANALYSIS

According to appellant, McMahon lied during his pretrial testimony by stating that, before the show-up, he did not suggest to the eyewitness that he had a person who matched the eyewitness's description in custody. The eyewitness testified at trial that McMahon told him that he had a person matching the eyewitness's description in custody. At trial, McMahon's testimony confirmed this portion of the eyewitness's testimony. Based on appellant's assertion that McMahon's pretrial-hearing testimony conflicted with his trial testimony, appellant argues that the eyewitness's identification was unreliable and that he is entitled to a new trial.

■■■ An appellate court reviews pretrial motions to suppress evidence by independently considering the facts to determine, as a matter of law, whether the district court erred in its decision. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). Whether identification evidence should be

admitted depends on the reliability of the identification. *State v. Taylor*, 594 N.W.2d 158, 161 (Minn.1999). An appellate court employs a two-part test to determine whether pretrial identification evidence is admissible. *Id.* First, the court determines whether the identification procedure was "unnecessarily suggestive." *Id.* (quotation and citation omitted). "Included in that inquiry is whether the defendant was *unfairly* singled out for identification." *Id.* (alteration in original) (quotation and citation omitted). Second, if the court determines that the identification procedure was unnecessarily suggestive, the court must then determine whether the identification caused "a very substantial likelihood of irreparable misidentification." *Id.* (quotations omitted). The court's ultimate concern is whether the techniques employed by the police influenced the witness's identification. *Id.* Thus, a witness's identification is considered reliable if the totality of the circumstances demonstrates that the identification has an adequate independent origin despite any suggestive procedure. *Id.*

At the pretrial hearing, when the state asked McMahon what he told the eyewitness before presenting appellant for identification, McMahon testified:

> I just told him to have a look at the person that was in the squad when he got out and to see if he could determine whether that was the person or not.

On cross-examination, appellant's attorney asked McMahon:

> [Y]ou also understood that—you told [the eyewitness] that he was coming to take a look at a fellow that you had in custody, right? I mean, you told him that he was going to see someone that was in custody?

The officer replied, "Yeah. That was the purpose." Appellant's attorney then asked:

> [D]id you also tell [the eyewitness] at that time that it was the fellow that you believed to be—may be the person involved with his neighbor's house?

McMahon responded, "Well, that was the purpose of why we were going to go look at him, yeah."

At trial, the state asked McMahon, "[D]o you remember what was said to the witness prior to the identification procedure?" McMahon answered, "Not specifically, no." The state then asked, "Would you have advised him that you had been a person in custody that might have been involved?" He said, "Well yeah. I told him that before we even walked down the alley." On cross-examination, appellant's attorney queried:

> And prior to your bringing [the eyewitness] to that—where your partner was with [appellant], you indicated to him words to the effect that you thought you had one of the guys?

McMahon answered, "Well, I would have told him *we had the person that matched the description in custody.*" (Emphasis added.) Appellant's attorney then asked, "And, in fact, you told him that's the purpose why you brought him there because you wanted him to take a look at this fellow?" McMahon responded, "That's correct." Appellant's attorney then asked, "Do you recall using those exact words; that you told [the eyewitness], we think we got one of the guys?" McMahon replied, "No."

Earlier at trial, however, the eyewitness testified:

> They said that they think that they got one of the guys, that they had pulled up on him. * * * They * * * said that they had apprehended one person carrying a bag of computer goods that

matched the description that I gave the 911 officer.

The eyewitness then stated:

> [T]hey asked me about what had happened. And then they said that when they apprehended this person, that they just pulled the car right up to them, the person stopped, set the bag down, and proceeded to be arrested and that was it.

■ Contrary to appellant's assertion, the record does not quite demonstrate that McMahon lied to the district court at the pretrial hearing about what he told the eyewitness. What the record does demonstrate is that McMahon's statements to the eyewitness tainted the identification procedure. When we read McMahon's and the eyewitness's trial testimony in conjunction, corroborating each other about what McMahon told the eyewitness, that conclusion is inescapable. Rather than simply asking the eyewitness whether he could identify anyone, McMahon's statements suggested to the eyewitness that the police *actually* had one of the burglars in custody. *But see State v. Carey,* 296 Minn. 214, 219, 207 N.W.2d 529, 532 (1973) (concluding witness's identification of robber was reliable even though police told witness they had apprehended person they felt was a suspect). *Taylor* is instructive. In dictum, the supreme court in *Taylor* stated that a one-person show-up is unnecessarily suggestive if the police single out a suspect from the general population based on a victim's description and present the suspect in handcuffs to the victim for identification. *Taylor,* 594 N.W.2d at 162. Here, the police singled out appellant based on the eyewitness's description, brought appellant back to the scene in a squad car, presented appellant in handcuffs, flanked by a uniformed police officer, told the wit-

ness that they thought they had a person in custody who matched the witness's description, and then asked the eyewitness for identification. We conclude "that" identification procedure was unnecessarily suggestive.

■ An unnecessarily suggestive identification procedure does not preclude admission of the identification testimony unless there is a substantial likelihood of irreparable misidentification.

*Id.* at 161.

> While the phrase was coined as a standard for determining whether an in-court identification would be admissible in the wake of a suggestive out-of-court identification, with the deletion of 'irreparable' it serves equally well as a standard for the admissibility of testimony concerning the out-of-court identification itself.

*Neil v. Biggers,* 409 U.S. 188, 198, 93 S.Ct. 375, 381, 34 L.Ed.2d 401 (1972) (citation omitted). An appellate court evaluates whether the identification was reliable despite the suggestive procedure by looking at the totality of the circumstances and considering the following five factors:

1. The opportunity of the witness to view the criminal at the time of the crime;

2. The witness' degree of attention;

3. The accuracy of the witness' prior description of the criminal;

4. The level of certainty demonstrated by the witness at the confrontation; and

5. The time between the crime and the confrontation.

*State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995) (citations omitted). A witness's identification is considered reliable

despite a suggestive nature if the totality of the circumstances demonstrates that the identification has an adequate independent origin. *Id.*

■ Although the eyewitness's attention was focused on the burglars, he was approximately 15 to 20 feet away from them, and he only saw them for five to ten seconds. The eyewitness testified that his view was partially obstructed by a seven-foot fence with grapevines growing through it, causing the burglars' facial features to be "fairly obscured." He told the 911 operator that both men were in their late teens to early twenties with short afros or "short cropped hair, tight to the head," and he did not notice any facial hair on either man. He stated appellant was approximately 5′10″. When appellant was arrested, he had a ponytail and mustache and stood 5′8″.

■ During trial, the eyewitness was unable to make an in-court identification of appellant, who was seated at defense counsel's table. The eyewitness admitted that he focused mainly on appellant's clothing to identify him. At trial, when the state showed the eyewitness the clothes appellant was arrested in, the eyewitness testified that he did not know if those were the clothes he saw appellant wearing. Given the record, we conclude that the suggestive identification procedure employed by McMahon, in which he essentially told the eyewitness that he had one of the burglars in custody, tainted the eyewitness's identification to such a degree that the identification was not based on an independent origin. Based on McMahon's comments to the eyewitness, it was inevitable that the witness would positively identify appellant as the person he saw leaving his neighbor's house. We conclude that the identifica-

tion was impermissibly suggestive and that there was a substantial likelihood of misidentification. Next, the eyewitness's inability to identify appellant at trial compels us to conclude that it was not harmless error for the jury to hear testimony regarding the eyewitness's out-of-court show-up identification. When applying the harmless error test, "appellate courts must look to the bases on which the jury rested its verdict and determine what effect the error had on the actual verdict." *State v. Jones*, 556 N.W.2d 903, 910 (Minn.1996) (citation omitted). The error is harmless beyond a reasonable doubt if the jury's verdict "was surely unattributable to the error." *Id.* (citation omitted).

■ Here, the state's case centered on two witnesses: the eyewitness, who testified that he identified appellant at the show-up as one of the men he saw leaving his neighbor's house, and the victim, who identified the computer equipment the police found on appellant when they stopped him as belonging to her. There were no other witnesses to the burglary. Given the tainted nature of the identification procedure, it is difficult to speculate whether the jury would have found appellant guilty without having knowledge of the out-of-court show-up identification. We simply cannot conclude that the jury's guilty verdict was "surely unattributable" to the improper identification testimony.

Appellant filed a pro se supplemental brief in which he appears to assert two pro se arguments. First, he argues that he was denied an opportunity to review the eyewitness's 911 call before trial and that this counsel failed to "bring forth part of the facts" of the 911 call. Second, appellant argues that the state failed to investigate the point of entry into the victim's

home, a muddy footprint, the victim's missing checkbook, and a soda can found in the victim's garbage. Appellant asserts that information from such an investigation would have exonerated him.

We need not reach the merits of appellant's pro se argument because we are reversing and remanding for a new trial based on the identification procedure.

## DECISION

The show-up identification procedure employed by the police was impermissibly suggestive and gave rise to a substantial likelihood of misidentification. The police informed the eyewitness before the show-up that they had a person matching the eyewitness's description in custody. When the eyewitness failed to identify appellant in court, we cannot conclude it was harmless error for the jury to hear the eyewitness's testimony regarding his out-of-court identification of appellant.

Reversed and remanded.