STATE of Minnesota, Respondent,

v.

Tony Terral KELLY, Appellant.

No. C1–02–1912.

Court of Appeals of Minnesota.

Sept. 2, 2003.

Mike Hatch, Attorney General, and Susan Gaertner, Ramsey County Attorney, Mark Nathan Lystig, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, Minnesota Public Defender, Marie Wolf, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HARTEN, Presiding Judge, STONEBURNER, Judge, and PARKER, Judge.*

## OPINION

STONEBURNER, Judge.

Appellant Tony Terral Kelly challenges his conviction of first-degree aggravated robbery. Appellant argues (1) that the prosecutor committed misconduct constituting plain error by making prejudicial insinuations not supported by evidence, and (2) that the district court should have suppressed the victim's identification of appellant because the identification procedure was impermissibly suggestive and unreliable. Because the identification procedure was not impermissibly suggestive, the identification evidence was properly admitted. But because the prosecutor's unfounded insinuations constitute plain error that deprived appellant of a fair trial, we reverse and remand for a new trial.

## FACTS

In February 2002, Jamal Ahmed Hussein was beaten and robbed at an apartment building where he had been helping a friend move. Immediately after the incident, Hussein and his friends called the police, who arrived at the apartment building shortly afterward. Police interviewed Hussein, who described his attackers as three African–American males, one who was tall and had a muscular build, one who had "Rastafarian"-type hair, and one who had short hair. Hussein told the police that he had seen the men near apartment 321 before the attack. The police took Hussein to apartment 321 and knocked on the door. Appellant Tony Terral Kelly was sitting inside the apartment. The police asked him to step out into the hallway and asked Hussein if appellant was involved in the incident. Hussein indicated that he was. Appellant was arrested and charged with aggravated robbery.

At trial, Hussein testified that he had seen two of his attackers earlier in the evening and that they had asked if they could buy the gold necklace that he was wearing. Hussein said, "No." One of the men had "Rastafarian" hair and the other was a tall, muscular African–American man. Later, when Hussein went back into the building because he had forgotten

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to    Minn. Const. art. VI, § 10.

something, he saw these two men standing in front of apartment 321. After yelling at Hussein, the men attacked him. Hussein managed to get up and began to run down the hallway. A third man, later identified by Hussein at the scene as appellant, appeared in front of him and forced Hussein down to the ground. Hussein was punched several more times and one of the three men took his necklace. Hussein was able to escape, although an unknown number of his attackers followed. In court, Hussein identified appellant as the third man who had appeared in front of him and forced him to the ground during the attack.

The state's case was based primarily on Hussein's identification of appellant as one of his assailants. There were no other witnesses to the attack. Hussein's necklace was never found.

Appellant testified at trial and denied participating in the assault and robbery. On cross-examination, the prosecutor, without objection, asked appellant:

Q. Do you recall on I believe it was Tuesday a group of spectators came in and had a seat in the back of this courtroom? Did you happen to see several African–American men come in and have a seat back here?

A. Yes.

Q. Would you describe one of them as having braids, as you described [when defining Rastafarian hair]?

A. Yes.

Q. Would you describe the other one as being a tall, muscular African–American male?

A. Yes.

Q. Did you know those men?

A. Yes.

Q. Now, Mr. Kelly, would you describe yourself as a—as black male with short, black hair?

A. Yes.

The prosecutor presented no evidence related to the two spectators. Appellant was found guilty of one count of aggravated robbery. This appeal followed.

## ISSUES

I. Did the prosecution's series of questions regarding men in the audience constitute plain error?

II. Did the district court err by failing to suppress Hussein's identification of appellant as the third assailant?

## ANALYSIS

### I.

Generally, a defendant is deemed to have forfeited his right to have an error reviewed on appeal if he fails to object to the error at trial. *State v. Quick,* 659 N.W.2d 701, 717 (Minn.2003). But this court has discretion to review a previously unraised issue if it is plain error. *Id.* The elements of plain error are (1) that there has been error; (2) that this error is plain; and (3) that the error affected substantial rights of the appellant. *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998); *see also* Minn. R.Crim. P. 31.02. Appellant argues that the prosecutor's cross-examination implying that two spectators in the courtroom with whom he is acquainted were his unapprehended accomplices in the crime constitutes plain error. We agree.

[W]e have held that the state cannot be permitted to deprive a defendant of a fair trial by means of insinuations and innuendoes which plant in the minds of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible.

*State v. Strommen,* 648 N.W.2d 681, 688 (Minn.2002) (quotation omitted). "[I]t is unprofessional conduct to ask a question

which implies a factual predicate which the examiner cannot support by evidence, ... or intentionally to mislead the jury in argument as to inferences it may draw." *State v. White*, 295 Minn. 217, 223, 203 N.W.2d 852, 857 (1973). And it is improper for prosecutors "to ask questions that are calculated to elicit or insinuate an inadmissible and highly prejudicial answer." *State v. Henderson*, 620 N.W.2d 688, 702 (Minn.2001).

The state brashly argues that the questioning may have been calculated to test appellant's ability to "identify a person based on a brief view of the person in the courtroom." But the prosecutor's cross-examination of appellant regarding the spectators was clearly constructed to imply a connection between appellant and Hussein's unidentified assailants. The prosecutor not only asked appellant if his acquaintances matched Hussein's descriptions of the other two attackers, but also asked appellant in the same sequence of questions, if he himself matched the victim's description of the third attacker. Given the questions asked, it is disingenuous to suggest that the questions were merely designed to test appellant's recall of people he had only briefly seen. The prosecutor's cross-examination insinuated facts that were not supported by evidence and that were highly prejudicial.

█ Error is plain if the error is "clear" or "obvious." *Strommen*, 648 N.W.2d at 688 (citations omitted). The state implies that the failure of the defense to object to the questioning at trial indicates that the conduct was not an obvious, or plain, error. But this is a circular analysis. It is precisely because defense counsel failed to object that the issue is subjected to a plain-error analysis on appellate review. The rule against insinuating or making inferences not supported by evidence is well established. And it was clear that the

state had not offered evidence during the presentation of its case that would support implicating the two spectators in the crime. It is plain that the prosecutor committed misconduct.

█ Even if there is plain error, this court will not reverse unless the error affected the defendant's substantial rights. *Griller*, 583 N.W.2d at 740. The required showing under the plain-error analysis that an appellant's substantial rights have been affected is satisfied if the error was prejudicial and affected the outcome of the case. *State v. Lindsey*, 654 N.W.2d 718, 724 (Minn.App.2002). Error is prejudicial if there exists a reasonable likelihood that it had a significant effect on the jury's verdict. *Griller*, 583 N.W.2d at 741; *see also State v. Richardson* 514 N.W.2d 573, 579 (Minn.App.1994) (holding that incidents (several) of prosecutorial misconduct constituted plain error because evidence of appellant's guilt, though considerable, was not overwhelming).

█ Here, evidence of appellant's guilt rests entirely on his presence in an apartment near where Hussein saw the other two attackers and on Hussein's identification. There is a reasonable likelihood that the jury drew inferences from the improper questions that affected the outcome of the case. We conclude that the prosecutor's misconduct affected appellant's substantial rights and deprived him of a fair trial. We therefore must reverse appellant's conviction and remand for a new trial. *See Quick*, 659 N.W.2d at 717 (stating that when plain error is established, reviewing court may correct the error if the fairness, integrity, or public reputation of the judicial proceeding is seriously affected).

## II.

█ Although we are remanding for a new trial based on prosecutorial mis-

conduct, we still must address appellant's assertion that Hussein's out-of-court identification of him as one of the attackers should have been suppressed and that the in-court identification should not have been permitted. Whether identification evidence is admissible depends on the reliability of the identification. *State v. Taylor,* 594 N.W.2d 158, 161 (Minn.1999). "[T]he reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *Id.* (citation omitted).

> [T]he test in determining the admissibility of in-court testimony allegedly tainted by suggestive identification procedures is whether, under the totality of the circumstances, the procedures created a substantial likelihood of irreparable misidentification.

*State v. Oksanen,* 311 Minn. 553, 249 N.W.2d 464, 465 (1977) (quotation omitted). And this court uses a two-part test to determine whether pretrial identification evidence is admissible. *Taylor,* 594 N.W.2d at 161; *see also Simmons v. United States,* 390 U.S. 377, 381, 88 S.Ct. 967, 969–70, 19 L.Ed.2d 1247 (1968). "The first inquiry focuses on whether the procedure was unnecessarily suggestive." *State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995) (citation omitted). Under the second prong of the test, even if the identification evidence is suggestive, it may be admissible if the totality of the circumstances establishes that the evidence was reliable. *Id.*

Appellant argues that the district court should have suppressed evidence of Hussein's identification of appellant at the scene, as well as his identification of appellant at trial, because the identification was based on an impermissibly suggestive one-person "show-up." We disagree. Although we recognize that a one-person show-up is, by its very nature, suggestive,

the identification in this case was not a one-person show-up identification. And even if the identification could be characterized as a one-person show-up, it was not unnecessarily suggestive. *See Taylor,* 594 N.W.2d at 161–62 (holding that a one-person show-up is not per se unnecessarily suggestive). At the scene of the crime, Hussein led police officers to the apartment where he saw two of his attackers prior to the attack. Appellant was asked to step out of the apartment and was identified by Hussein as a participant in the crime. The identification in this case is unlike identifications that we have found to be unnecessarily suggestive, when the police singled out an individual based on a description, brought the individual back to the witness, and presented the suspect to the witness in handcuffs. *See State v. Anderson,* 657 N.W.2d 846, 851 (Minn.App. 2002); *see also Taylor,* 594 N.W.2d at 162 (distinguishing the facts of the case by stating, "This is not a case where the police singled [defendant] out from the general population based on a description given to them by a victim, and then proceeded to present him to the victim, in handcuffs, for identification in a one-person show-up"). We agree with the district court that the identification procedure in this case was not unnecessarily suggestive and that the evidence was properly admitted, including Hussein's in-court identification of appellant as his assailant.

## DECISION

The prosecutor committed prosecutorial misconduct by asking questions of appellant during cross-examination that implied prejudicial facts not in evidence. The misconduct constitutes plain error that deprived appellant of a fair trial, entitling him to a new trial. The identification procedure was not impermissibly suggestive, therefore evidence of the identification was properly admitted.

Affirmed in part, reversed in part, and remanded.