**STATE of Minnesota, Respondent,**

v.

**William Peter LUSHENKO, Appellant.**

**No. A05–819.**

Court of Appeals of Minnesota.

May 30, 2006.

Mike Hatch, Attorney General, Tibor M. Gallo, Assistant Attorney General, St. Paul, MN and Timothy R. Faver, Beltrami County Attorney, Bemidji, MN, for respondent.

John M. Stuart, State Public Defender, Leslie J. Rosenberg, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by HALBROOKS, Presiding Judge; LANSING, Judge; and SHUMAKER, Judge.

## OPINION

HALBROOKS, Judge.

Appellant challenges the district court's evidentiary ruling on the admissibility of the show-up identification procedure and the district court's authority to conduct a bifurcated trial on the issue of whether appellant is a career offender under the statute. Although we conclude that the

show-up identification was unnecessarily suggestive, because it was reliable and because the district court had the inherent authority to craft a bifurcated sentencing procedure, we affirm.

## FACTS

When Brian Brunetta arrived at his house around noon on June 3, 2004, he observed an unfamiliar blue Chevrolet Blazer parked in his driveway. As Brunetta approached the vehicle, which was still running, a man came from around the back of Brunetta's house and asked Brunetta if he would like to purchase an aerial photo of his home. Brunetta declined the offer. The man then asked Brunetta if he knew anyone who would want such a photo; when Brunetta said he did not, the man left.

After the man left and Brunetta's wife arrived home, they realized that their home had been burglarized and called the police. Brunetta gave the responding officer a physical description of the man on his driveway—6'1" and heavyset—as well as a description of the vehicle and its license-plate number. With that information, the officer identified the registered owner of the vehicle, appellant William Lushenko. The officer obtained appellant's driver's-license photo and showed it to Brunetta. Brunetta stated that he was 90% positive that appellant was the man he had seen on his driveway.

Respondent State of Minnesota charged appellant with second-degree burglary. At the pretrial omnibus proceeding, appellant moved to suppress evidence of the show-up identification on the ground that the identification procedure was both unnecessarily suggestive and unreliable. The district court denied appellant's motion, finding the show-up to be unnecessarily suggestive, but nonetheless reliable.

A jury found appellant guilty of second-degree burglary. Following the jury's verdict and over appellant's objection, the district court allowed the state to present evidence regarding whether appellant was a career offender—namely, whether his current offense was part of a pattern of criminal conduct. The state introduced evidence of appellant's seven prior felony convictions in the preceding 15 years. Appellant then had an opportunity to respond to the state's evidence. At the conclusion of the evidence and counsels' final arguments, the district court submitted a special interrogatory to the jury, asking whether it found that appellant's current conviction was part of a pattern of criminal conduct and instructed the jury that in order to answer "Yes," it must find that fact to have been proven beyond a reasonable doubt. The jury answered "Yes" to the special interrogatory, and the district court imposed the statutory maximum sentence of 120 months, executed. This appeal follows.

## ISSUES

1. Did the district court abuse its discretion by admitting evidence of the show-up identification procedure?
2. Did the district court err by conducting a bifurcated trial?

## ANALYSIS

### I.

■■■ "Evidentiary rulings rest within the sound discretion of the trial court and will not be reversed absent a clear abuse of discretion. On appeal, the appellant has the burden of establishing that the [district] court abused its discretion and that appellant was thereby prejudiced." *State v. Amos*, 658 N.W.2d 201, 203 (Minn.2003) (citation omitted). But if "the facts are not in dispute and the [district] court's

decision is a question of law, the reviewing court may independently review the facts and determine, as a matter of law, whether the evidence need be suppressed." *State v. Taylor,* 594 N.W.2d 158, 161 (Minn. 1999).

> When determining whether a pretrial identification must be suppressed, we apply a two-part test. The first inquiry focuses on whether the procedure was unnecessarily suggestive. . . .
>
> If the procedure is found to be unnecessarily suggestive, the court must then determine under the totality of the circumstances whether the identification created a very substantial likelihood of irreparable misidentification.

*Id.* (citations and quotations omitted); *see also State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995) (noting same test). Error in admission of tainted pretrial identification "does not require a new trial if the state can show beyond a reasonable doubt that the error was harmless." *State v. Jones,* 556 N.W.2d 903, 913 (Minn.1996).

■ Incorporated into the first prong "is 'whether the defendant was unfairly singled out for identification' " or "whether the procedure used by the police influenced the witness identification of the defendant." *Taylor,* 594 N.W.2d at 161 (emphasis omitted) (quoting *Ostrem,* 535 N.W.2d at 921). The supreme court has held that "one-person show-up[s are] not unnecessarily suggestive per se." *Id.* at 161–62. Here, the district court determined that the show-up identification procedure used by the police was unnecessarily suggestive because the police showed only one photo—that of appellant—to Brunetta. *See State v. Marhoun,* 323 N.W.2d 729, 733 (Minn.1982) (stating that when police show a photo of one suspect to witnesses the procedure is suggestive). We agree.

■ Under the second prong, courts look at whether, under the totality of the circumstances, there is a substantial likelihood for an irreparable misidentification. *Taylor,* 594 N.W.2d at 161. Thus, even where a suggestive procedure is employed, if the "witness' identification has an adequate independent origin, it is considered to be reliable." *Id.* In order to determine reliability, the Minnesota Supreme Court adopted the five-factor test articulated by the United States Supreme Court in *Neil v. Biggers,* 409 U.S. 188, 199, 93 S.Ct. 375, 382, 34 L.Ed.2d 401 (1972). *State v. Bellcourt,* 312 Minn. 263, 264, 251 N.W.2d 631, 633 (1977).

■ The five factors are:

1. The opportunity of the witness to view the criminal at the time of the crime;
2. The witness' degree of attention;
3. The accuracy of the witness' prior description of the criminal;
4. The level of certainty demonstrated by the witness at the photo display;
5. The time between the crime and the confrontation.

*Ostrem,* 535 N.W.2d at 921.

### 1. Opportunity to view the criminal

Here, the district court found that Brunetta had an adequate opportunity to view appellant in part because the two engaged in a conversation. When Brunetta arrived home, a man appeared from the back of the house and asked Brunetta if he wanted to purchase an aerial photo of his home. When Brunetta declined, the man asked him if he knew anyone who might like one. Brunetta again said he did not, and the man got into his vehicle and drove away. While it was not a lengthy exchange, Brunetta had a good opportunity to view the man in broad daylight as he carried on a conversation with him.

## 2. Degree of attention

The district court found that Brunetta's degree of attention was heightened by the fact that he arrived home to find a strange vehicle parked, but still running, in his driveway. This made Brunetta suspicious. After speaking with the man, who asked a strange question, Brunetta was sufficiently disbelieving of the man's explanation for his presence that Brunetta took down his license-plate number.

## 3. Accuracy of prior description

The district court stated that Brunetta gave the police a description of the vehicle that included its make, color, and license-plate number, as well as the man's physical description. Appellant argues that the physical description given was merely a general description but fails to address the fact that the description matched him. Appellant also fails to acknowledge the specificity and accuracy of the vehicle description.

## 4. Level of certainty

The district court found that Brunetta was "90% certain the photo was the person he saw in his driveway." This fact is supported by appellant's memorandum in support of his motion to suppress where he states that Brunetta made a positive identification and by the state's memorandum, which states that Brunetta was 90% positive.

## 5. Elapsed time between crime and confrontation

It is undisputed that Brunetta identified appellant as the man on his driveway within three hours after his conversation with him.

Based on its analysis of the *Biggers* factors, the district court determined that there was little likelihood of misidentifica-

tion and that Brunetta's identification had adequate independent origin to be admissible. Having reviewed the record, we conclude that the district court did not err in its decision to admit evidence of the show-up identification. While the initial identification procedure, consisting of showing only one photograph to Brunetta, was unnecessarily suggestive, the identification did not create a substantial likelihood of irreparable misidentification under the totality of the circumstances.

## II.

■ Appellant next challenges the district court's decision to conduct a bifurcated trial and to submit the issue of whether appellant's current offense is part of a pattern of criminal conduct to the same jury following its verdict convicting appellant of second-degree burglary. Acknowledging that *Blakely v. Washington,* 542 U.S. 296, 303, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004), mandates a jury determination of this fact in order to depart from the presumptive guidelines sentence, appellant argues that the district court lacked both statutory and inherent authority to bifurcate the proceedings.

The district court sentenced appellant under Minn.Stat. § 609.1095, subd. 4 (2002), which provides:

Whenever a person is convicted of a felony, and the judge is imposing an executed sentence based on a sentencing guidelines presumptive imprisonment sentence, the judge may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence if the judge finds and specifies on the record that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct.[1]

1. The legislature has since amended Minn.

Stat. § 609.1095. *See* 2005 Minn. Laws ch.

The supreme court has held that the determination of a pattern of criminal conduct for use in sentencing requires a factual finding that goes beyond simply counting the number of prior convictions, and, therefore, the imposition of an enhanced sentence based on a district court's finding of a pattern of criminal conduct violates a defendant's Sixth Amendment right to a trial by jury. *State v. Henderson*, 706 N.W.2d 758, 762 (Minn. 2005). It is undisputed that the district court lacked statutory authority to submit the pattern finding to a jury. Accordingly, the issue before us is whether the district court possessed inherent authority to bifurcate appellant's trial and submit the issue of pattern to the jury.

In *State v. Shattuck*, the supreme court examined whether it had inherent authority to authorize the use of sentencing juries and bifurcated-trial proceedings to remedy a *Blakely* violation. 704 N.W.2d 131, 147 (Minn.2005). The court stated that it possessed inherent authority, arising from its judicial powers, to regulate court procedure to apply the requirements of *Blakely* to sentencing in Minnesota. *Id.* at 148. But the court observed that it did not possess the authority to mandate sentencing-procedure requirements or "to engraft sentencing-jury or bifurcated-trial requirements onto the Sentencing Guidelines," *id.*, stating, "We have emphasized that while we can strike a severable provision of a law if found to be unconstitutional, 'we cannot add language to a statute in order to render it constitutionally permissible.'" *Id.* at 143 (quoting *Chapman v. Comm'r of Revenue*, 651 N.W.2d 825, 836 (Minn. 2002)); *see also Henderson*, 706 N.W.2d at 763 (stating that "[W]e declined to engraft

onto the sentencing guidelines and sentencing statutes a requirement for sentencing juries or bifurcated trials, *for to do so would require us to rewrite those guidelines and statutes.*") (emphasis added).

Therefore, while the supreme court stated that its severance jurisprudence does not permit it to engraft sentencing-procedure requirements onto the guidelines, we do not understand the supreme court to be restricting the district court's inherent authority to craft sentencing procedures. For example, if a district court exercised its inherent authority to conduct a bifurcated trial or impanel a sentencing jury, it is not establishing the requirement of bifurcated trials or sentencing juries in every case, but merely adopting the procedure in that individual case.

The supreme court's statement regarding its severance jurisprudence refers only to its ability to require a remedy such as bifurcated trials or sentencing juries in order to make the guidelines constitutional. It did not refer to whether it has the ability to create constitutional sentencing procedures, as it clearly has the authority to do that. *Shattuck*, 704 N.W.2d at 148 (stating that "this court has the authority to establish procedures to apply the requirements of *Apprendi* and *Blakely* to sentencing in Minnesota").

We recognize that there are differing views on this issue within this court. *See State v. Hobbs*, 713 N.W.2d 884 (Minn.App. 2006) (holding that the district court did not have statutory or inherent authority to submit to a jury the issue of dangerousness to public safety under Minn.Stat. § 609.1095, subd. 2 (2002)); *State v. Mad-*

136, art. 16 §§ 11, 12. The amended statute allows a district court judge to enhance a defendant's sentence if "the factfinder" determines that the current offense was part of a pattern of criminal conduct. Because the leg-

islature specifically provided that the amended statute only "applies to crimes committed on or after [August 1, 2005]," the amended statute is not applicable to appellant's sentencing.

*dox,* No. A05–339 (Minn.App. May 30, 2006). But we believe to be incorrect the argument that the district court erred by conducting a bifurcated trial because *Shattuck* labeled sentencing procedures as both judicial and legislative functions because it does not consider the distinction between crafting sentencing procedures and engrafting sentencing requirements onto the Sentencing Guidelines.

■ We agree that altering the Sentencing Guidelines is a legislative function, as they were legislatively created. But it was within the court's inherent authority and discretion to craft a bifurcated-trial procedure in the wake of *Blakely* before the legislature amended the guidelines, because sentencing "within the limits prescribed by the legislature is purely a judicial function." *State v. Olson,* 325 N.W.2d 13, 18 (Minn.1982). Sentencing according to *Blakely*—permitting an upward departure only where a jury finds aggravating factors—is still sentencing "within the limits prescribed by the legislature" because the sentence is still within the statutory sentencing range. Therefore, we conclude that the supreme court in *Shattuck* affirmed the court's inherent authority to craft sentencing procedures.

The legislature has since amended the sentencing-procedure statute, stating, in pertinent part:

> Procedures in cases where state intends to seek an aggravated departure. (a) When the prosecutor provides reasonable notice under subdivision 4, the district court shall allow the state to prove beyond a reasonable doubt to a jury of 12 members the factors in support of the state's request for an aggravated departure from the Sentencing Guidelines as provided in paragraph (b) or (c).
>
> . . . .

> (c) *The district court shall bifurcate the proceedings, or impanel a resentencing jury, to allow for the production of evidence, argument, and deliberations on the existence of factors in support of an aggravated departure after the return of a guilty verdict* when the evidence in support of an aggravated departure:
>
> (1) includes evidence that is otherwise inadmissible at a trial on the elements of the offense; and
>
> (2) would result in unfair prejudice to the defendant.

Minn.Stat. § 244.10, subd. 5 (Supp.2005) (emphasis added). Hence, the legislature has now provided for bifurcated trials, including sentencing juries on remand. The supreme court in *Shattuck* acknowledged this amendment to the statute when, on rehearing, it amended its opinion, stating:

> We note that the legislature has recently enacted significant new requirements for aggravated sentencing departures, including sentencing juries and bifurcated trials, and that *these changes apply both prospectively and to resentencing hearings.* We express no opinion about these recent changes, and *do not foreclose the district court from considering any constitutionally applicable and/or available laws on remand.*

704 N.W.2d at 148 n. 17 (emphasis added) (citation omitted). The supreme court remanded for proceedings consistent with the opinion. Thus, if the parties in *Shattuck* chose to proceed with a resentencing hearing on remand, the district court had the authority to impanel a sentencing jury.

The supreme court then issued *State v. Barker,* holding that the mandatory-minimum sentencing provided by Minn.Stat. § 609.11 (2004) for possession of a firearm while committing certain offenses was "unconstitutional to the extent that it authorize[d] the district court to make an upward

durational departure upon finding a sentencing factor without the aid of a jury or admission by the defendant." 705 N.W.2d 768, 773 (Minn.2005). With respect to the appropriate remedy, the state in *Barker* argued that the supreme court should remand for resentencing, allowing the district court to impanel a jury to determine the sentencing factors. *Id.* at 775. The supreme court disagreed and remanded for imposition of the presumptive sentence because the legislature had not amended section 609.11. *Id.* at 776 (stating "the legislature did not simultaneously amend section 609.11, which continues to provide" for a court determination of facts supporting this charge).

In so doing, the supreme court recognized in *Barker* that the legislature had amended other mandatory-minimum statutes, including the career-offender statute: "Finally, several other mandatory minimum statutes were amended in 2005 to provide for sentencing juries and bifurcated trials at resentencing hearings. These changes affect ... Minn.Stat. § 609.1095 (2004) (relating to certain dangerous and career offenders). Noticeably absent from this list is section 609.11." *Id.* (citations omitted). Because the legislature did not act to apply sentencing juries and bifurcated trials to section 609.11, the supreme court distinguished that section from the career-offender statute and others, leaving imposition of the presumptive sentence as the only appropriate remedy on remand. *See id.*

Following *Barker*, the supreme court applied *Blakely* to the career-offender statute and reversed and remanded with instructions to the district court to proceed with "resentencing consistent with *Shattuck.*" *Henderson*, 706 N.W.2d at 763. This remedy is consistent with the rationale distinguishing Minn.Stat. § 609.11 in *Barker* from the career-offender statute.

If the legislature had not amended Minn. Stat. § 609.1095, the supreme court presumably would have reversed and remanded for imposition of the presumptive sentence, as it did in *Barker*. But because the legislature amended Minn.Stat. § 609.1095, on remand, the district court would be free to utilize Minn.Stat. § 244.10 and impanel a sentencing jury.

In an unpublished opinion subsequent to *Shattuck*, this court held that a district court did not exceed its authority by submitting an aggravating sentencing factor to the jury in a bifurcated trial after the jury rendered its verdict on the issue of guilt. *State v. Chauvin*, No. A05–726, 2005 WL 2979382, at *5 (Minn.App. Nov.8, 2005), *review granted* (Minn. Jan. 17, 2006). Like appellant here, Chauvin argued that the sentencing-jury proceeding initiated by the district court was not authorized by any rule or statute. *Id.* at *2. This court rejected that argument, relying on the language in *Shattuck* that recognizes the court's authority to establish procedures in conformance with *Blakely* and noting the absurdity in limiting a district court's ability to respond to a constitutional holding mandating a particular and familiar procedure—a jury trial—because it was not preauthorized by the legislature. *Id.* at *3–*4 (stating that "[i]t would be curious indeed if a court, responding to a constitutional holding mandating a particular procedure, particularly one as familiar as a jury determination of a factual issue, could not implement that procedure until the legislature or a rules committee had cleared the way"). The *Chauvin* court noted the similarity between the bifurcated-sentencing procedure and the use of special interrogatories, which courts use to submit to juries issues that are relevant to the proper sentence. *Id.* at *3.

## DECISION

We conclude that the district court did not abuse its discretion by admitting evi-

dence of the show-up identification because it did not create a substantial likelihood of irreparable misidentification. We further conclude that the district court did not clearly err by conducting a bifurcated trial because it had inherent authority to craft a sentencing procedure in conformance with *Blakely*.

**Affirmed.**

SHUMAKER, Judge (concurring specially).

I respectfully concur and write separately to note a burgeoning confusion in the caselaw as to what is and what is not covered by the Minnesota Sentencing Guidelines (MSG).

For nearly all felonies in Minnesota, the MSG provide presumptive sentences that are deemed appropriate, given severity levels and criminal histories. If sentences are to be executed, the MSG provide for discretionary ranges of sentences above and below the presumptive sentences. The presumptive sentences and discretionary ranges are disclosed on a sentencing-guidelines grid.

The MSG are conditionally mandatory: "Thus, the judge *shall* pronounce a sentence within the applicable range unless there exist identifiable, substantial, and compelling circumstances to support a sentence outside the range on the grid." Minn. Sent. Guidelines II.D (emphasis added). Except in an advisory sense, the MSG do not apply to sentences that are not within the guidelines grid: "A sentence outside the applicable range on the grid is a departure from the sentencing guidelines *and is not controlled by the guidelines*, but rather, is an exercise of judicial discretion constrained by case law and appellate review." *Id.* (emphasis added).

The constraint of the caselaw in *Apprendi* and *Blakely* is clear. The discretion to sentence higher than the term provided in a sentencing grid is not exercisable unless a jury determines the fact that supports a higher term, or unless a defendant waives the right to a jury determination.

What we should not lose sight of in our sentencing jurisprudence is that departures never have been controlled by the guidelines but rather always have existed in the realm of inherent judicial authority. And although the legislature has, in some statutes, provided for sentencing departures, it has never purported to exclusively control the realm of sentencing departures. As the supreme court recognized in *Shattuck*, the judiciary has the inherent authority to regulate the procedures for applying *Blakely*. *State v. Shattuck*, 704 N.W.2d 131, 148 (Minn.2005). When the supreme court stated in *Shattuck* that it did not have the authority to "engraft sentencing-jury or bifurcated-trial *requirements* onto the Sentencing Guidelines," it was simply recognizing that the MSG is a legislative creation and that the judiciary has no authority to alter legislation. *Id.* (emphasis added). But departures are not a legislative creation. It is clear that they operate outside the legislative creation known as the MSG, or at least did until the enactment of Minn.Stat. § 244.10, subd. 5 (Supp.2005).

I respectfully urge that *State v. Maddox*, No. A05–339 (Minn.App. May 30, 2006), fails to make the critical distinction between what is and what is not a legislative function regarding sentencing. Prior to the 2006 sentencing legislation, departures were expressly not within the domain of the legislatively created MSG but rather were clearly within the inherent powers of the judiciary. The instant departure is lodged squarely within judicial

authority as constrained by *Blakely.* Thus, in my view, affirmance is compelled.