*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0718**

State of Minnesota,
Respondent,

vs.

Antonio Tedell Hammonds-Ford,
Appellant.

**Filed February 27, 2017
Affirmed
Hooten, Judge**

Hennepin County District Court
File No. 27-CR-14-31493

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Rochelle R. Winn, Assistant Public Defender, St. Paul, Minnesota (for appellant)

        Considered and decided by Hooten, Presiding Judge; Reilly, Judge; and Smith, Tracy M., Judge.

UNPUBLISHED OPINION

**HOOTEN**, Judge

Appellant challenges his conviction of second-degree aggravated robbery, arguing that the district court committed reversible error by admitting show-up identification evidence that was unnecessarily suggestive and unreliable. We affirm.

## FACTS

At approximately 6:40 p.m. on October 22, 2014, Minneapolis Police Officer Seth Porras and his partner responded to a 911 call reporting a robbery. When they arrived at the scene approximately two to four minutes later, the officers spoke with S.A., who reported that he was waiting at a bus stop when he was approached by three black males. One of the men, who was wearing a black stocking cap, black sweatshirt, and a white t-shirt sticking out of the bottom of his sweatshirt, told S.A. to hand over his phone or the man would "pop him." S.A. handed the man his cell phone. The man began to walk away, but returned to ask S.A. for the passcode to his phone. As the group left, S.A. called 911 using a nearby phone, reported the robbery, and told the operator what direction the group was heading.

At approximately 6:43 p.m., Minneapolis Police Officers Anna Hedberg and Paul Dellwo were on the way to the scene in order to provide assistance. Approximately four blocks away from the scene, the officers observed two individuals who appeared to match S.A.'s description of the suspects. One of the individuals, who was wearing a black stocking cap, a black sweatshirt, and a white t-shirt sticking out of the bottom of his sweatshirt, was standing by a vehicle. This individual was later identified as appellant

Antonio Tedell Hammonds-Ford. The officers aired over the radio that they had located a possible suspect, handcuffed Hammonds-Ford, removed his cap, and placed him in the back of the squad car. The officers received permission from the driver to search the vehicle and discovered S.A.'s cell phone.

Shortly before 7:00 p.m., Officer Porras drove S.A. to the location where Officers Hedberg and Dellwo had detained Hammonds-Ford. Officer Porras told S.A. that he was going to show him "an individual who may have or may not have been involved" with the robbery. Officer Porras asked S.A. to state whether the individual was involved and, if so, how certain he was that the individual was the person who had committed the crime. Officers Hedberg and Dellwo took Hammonds-Ford out of the squad car and removed his handcuffs before leading him into S.A's view. The officers positioned Hammonds-Ford in a spotlight from Officer Porras' squad car, approximately 15 feet in front of S.A., who was seated in the squad car. While S.A. looked at Hammonds-Ford, Officers Hedberg and Dellwo remained on either side of Hammonds-Ford. S.A. stated that he was "100%" certain that Hammonds-Ford was the individual who had robbed him and stated that Hammonds-Ford had a hat on at the time of the robbery.

Hammonds-Ford was charged with one count of second-degree aggravated robbery. Hammonds-Ford moved to suppress the show-up identification and evidence seized at the scene. After a *Rasmussen* hearing, the district court denied the motion.

Pursuant to Minn. R. Crim. P. 26.01, subd. 4, Hammonds-Ford waived his right to trial and stipulated to the state's case in order to obtain appellate review of the pretrial

3

ruling. The district court found Hammonds-Ford guilty and sentenced him to 40 months. This appeal followed.

## D E C I S I O N

Hammonds-Ford argues that the district court erred by denying his motion to suppress the show-up identification evidence. We disagree.

When the facts are not in dispute, an appellate court reviews a pretrial order suppressing evidence by independently considering the facts to determine whether the district court erred as a matter of law. *State v. Taylor*, 594 N.W.2d 158, 161 (Minn. 1999). Courts engage in a two-step inquiry when determining whether a pretrial identification must be suppressed. *Id.* First, the court determines whether the identification procedure was "unnecessarily suggestive." *Id.* (quotation omitted). Second, if the court determines that the procedure was unnecessarily suggestive, "the court must then determine under the totality of the circumstances whether the identification created a very substantial likelihood of irreparable misidentification." *Id.* (quotation omitted). "[I]f the totality of the circumstances shows the witness' identification has an adequate independent origin, it is considered to be reliable despite the suggestive procedure." *Id.* (quotation omitted).

The parties disagree regarding whether the show-up identification in this case was unnecessarily suggestive. Because a determination that the identification evidence was reliable under the totality of the circumstances would be determinative even if the procedure employed by the officers was unnecessarily suggestive, we focus on the second step of the test. *See State v. Young*, 710 N.W.2d 272, 282 (Minn. 2006) (stating that even

4

if procedure was unnecessarily suggestive, identification evidence may be admissible if totality of circumstances establishes that evidence was reliable).

In evaluating whether the totality of the circumstances demonstrates that the witness' identification has adequate independent origin, we consider the following five factors:

> 1. The opportunity of the witness to view the criminal at the time of the crime;
> 2. The witness' degree of attention;
> 3. The accuracy of the witness' prior description of the criminal;
> 4. The level of certainty demonstrated by the witness at the [time of the identification procedure];
> 5. The time between the crime and the confrontation.

*State v. Ostrem*, 535 N.W.2d 916, 921 (Minn. 1995).

S.A. had the opportunity to view Hammonds-Ford twice at close range during the incident—first, when Hammonds-Ford ordered S.A. to hand over his cell phone and, second, when Hammonds-Ford returned to demand S.A.'s passcode. While Hammonds-Ford argues that S.A. had no opportunity to view his assailant because it was dark, Officer Dellwo testified that it was still light out when he and Officer Hedberg initially detained Hammonds-Ford. The accuracy of S.A.'s description of Hammonds-Ford, describing him as a black male wearing a black stocking cap and a black sweatshirt with a white t-shirt sticking out of the bottom, demonstrates that S.A. paid a high degree of attention to the appearance of the individual who robbed him. S.A. stated that he was "100%" certain that Hammonds-Ford was the perpetrator and noted that at the time of the robbery, he had worn

5

a stocking cap. Finally, approximately 20 minutes after the crime, S.A. identified Hammonds-Ford as the man who had robbed him.

All five factors support the admissibility of the show-up identification. Because the totality of the circumstances establishes an adequate independent origin for the identification, even if the identification procedure employed by the officers was unnecessarily suggestive, we conclude that the identification was reliable. State v. *Anderson*, 657 N.W.2d 846, 851–52 (Minn. App. 2002). Therefore, we conclude that the district court did not err in admitting the show-up identification evidence.

**Affirmed.**