In the Matter of the WELFARE OF M.E.M., Jr.

No. A03–245.

Court of Appeals of Minnesota.

Feb. 3, 2004.

Leonardo Castro, Fourth District Public Defender, Melissa A. Haley, Assistant Public Defender, Minneapolis, MN, for appellant.

Amy J. Klobuchar, Hennepin County Attorney, Michael K. Walz, Assistant County Attorney, Minneapolis, MN, and Mike Hatch, Attorney General, St. Paul, MN, for respondent.

Considered and decided by RANDALL, Presiding Judge, SHUMAKER, Judge, and CRIPPEN, Judge *.

## OPINION

RANDALL, Judge.

After being designated an extended-jurisdiction juvenile, appellant was tried and convicted of aiding and abetting aggravated robbery and third-degree assault. On appeal from the judgment and conviction, appellant argues that (1) he did not properly waive his right to a jury trial and an omnibus hearing; (2) he did not waive his right to testify in his defense, but if he did, the waiver was improper; (3) the admission of unduly suggestive show-up identification evidence violated his due-process right to a fair trial; and (4) the evidence to prove identity beyond a reasonable doubt was insufficient. The record supports a

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

knowledgeable waiver of appellant's rights; the district court's reliance on the identification evidence was not clearly erroneous. We affirm.

## FACTS

At approximately 9:30 p.m. on November 30, 2002, the victim, Q.A., was carrying her purse under her shoulder as she walked down Lake Street. Before entering a grocery store, she paused to read the store's sign. While she was standing outside the store reading the sign, Q.A. was pushed to the ground by two assailants. The assailants took Q.A.'s purse, which contained credit cards, a debit card, and $40 in cash. As a result of the attack, Q.A. suffered a broken shoulder and a large cut on her forehead.

At trial, Q.A. testified that she believed there were two assailants because "I was like wrestling and I felt someone else helping push my head firm into the ground." Q.A. testified that after she was pushed, she lost consciousness for a few seconds. When she regained consciousness, Q.A. looked up and observed two people running away from the scene. One was wearing a yellow jersey and the other was wearing a gray hooded sweatshirt. Q.A. stated that she was not able to see their faces.

Officer Dale was on patrol in his squad car in the area of the attack when he heard a woman screaming. He then observed a woman holding her head and two young men running from the scene. Officer Dale testified that the men were running at "a pretty good sprint" and appeared to be running side-by-side. Officer Dale also observed that one of the young

Minn. Const. art. VI, § 10.

men was wearing something light and that the other had on a dark sweatshirt.

Officer Dale followed the two individuals in his squad car. Although the individuals split up, Officer Dale did not lose sight of appellant, M.E.M. Office Dale was able to apprehend appellant at gunpoint and place him in the squad car. Officer Dale testified that he asked appellant what was going on, and appellant said something about "helping his dad move, trying to catch a U-haul, something like that." A pat search did not reveal any of the property taken from Q.A.

Officer Dale returned with appellant to the scene of the assault where Q.A. was shaking, crying hysterically, and holding a bandage to her forehead. Despite her condition, Officer Dale conducted a show up, and Q.A. identified appellant as the assailant who was "the one wearing . . . the jersey and shirts." However, later, Q.A. could not make an in-court identification of appellant. Q.A. ultimately testified that the jersey was consistent with the person she saw running away, but there was inconsistency concerning whether the jersey had long or short sleeves.

Also present at the scene were Heidi Johnson and Jeremy Barthels. Johnson lived in the vicinity of the incident, and the two were walking to the video store to rent some videos. Johnson testified that as they walked down the street, they passed two males walking very fast and talking excitedly to each other. Johnson testified that she noticed the individuals because it was "pretty cold out," causing her to wear "a lot of layers," but one male was wearing only a sweatshirt and the other only a jersey. Johnson stated that the jersey was bright "orangish" colored and displayed "Astros." Despite her uncertainty as to the exact details of the jersey, Johnson testified that it was the jersey worn by the male she had passed on the street on the night in question.

After passing the two males, Johnson and Barthels walked a few steps and then heard a scream. Johnson testified that they turned around and witnessed the two individuals running from the scene. Johnson and Barthels stopped to help Q.A., and shortly thereafter, Office Dale returned with appellant. Johnson identified appellant as, to the best of her recollection, the same person she had seen earlier. At trial, Johnson testified that she was "pretty sure" that appellant was the person who had walked by her immediately before Q.A. was assaulted, and she was positive that the jersey she observed on the night of the incident displayed "Astros."

Barthels testified at trial. Barthels stated that he was with Johnson in the area of Lake Street when they passed two males. Barthels testified that he noticed the males because it was a cold night, but the two young men were not wearing coats. Barthels stated that the male he noticed right away was "wearing a baseball jersey, a Houston Astros baseball jersey and just the jersey and I kind of gave that a double look because it was a colder night and I noticed that he wasn't wearing a coat and he had this bright jersey on." Barthels noted that although it was night, a nearby mini-mart had lights around the outside so as to make the surroundings visible. Barthels testified further that as they passed the two males, he overheard one say "there's one" or "that's one."

A "couple seconds" after passing the two men, Barthels stated that he heard a scream. Barthels instantly turned around and noticed the person wearing the jersey and the other individual fleeing from the scene. Barthels stated that the individuals were sprinting and it was not a casual run. When Officer Dale returned with appellant, Barthels identified appellant as the

person that he passed and then saw running from the scene. Although Barthels could not describe the clothing of the other male, nor could he identify appellant in the courtroom, Barthels stated that the jersey was the same jersey worn by the individual that had passed him on the street and that he observed running away.

Following the identifications, appellant was arrested and charged with aggravated robbery in the first degree and assault in the third degree. Sergeant Ritschel interviewed appellant at the Juvenile Detention Center where appellant claimed that he was in front of another person named "Alonzo" and that "Alonzo" actually committed the robbery. Sergeant Ritschel testified that appellant denied involvement in the assault and robbery. Appellant's descriptions of the events of the night of the incident were inconsistent.

The prosecution designated appellant as an extended-jurisdiction juvenile (EJJ), and the court determined the case would proceed as an EJJ matter. Before appellant waived any rights associated with the EJJ designation, the court had appellant take the stand where the court and counsel questioned appellant concerning his understanding of his rights. The court then accepted appellant's waiver of his right to a jury trial, and a bench trial ensued. Appellant was found guilty of aiding and abetting aggravated robbery and third-degree assault. This appeal followed.

## ISSUES

I. Did appellant properly waive his right to a jury trial and an omnibus hearing?

II. Did appellant waive his right to testify in his defense, and if so, was the waiver proper?

III. Did the admission of show-up evidence violate appellant's due-process rights to a fair trial?

IV. Was there sufficient evidence to support the district court's finding of guilt beyond a reasonable doubt?

## DECISION

### I.

 Appellant contends that he was not fully and effectively informed of his rights to a jury trial and to an omnibus hearing. Under Minn. R. Juv. P. 19.07, any juvenile subject to EJJ prosecution is entitled to a jury trial pursuant to Minn. R.Crim. P. 26. *See also* Minn.Stat. § 260B.130, subd. 3 (2002). The right to a jury trial is fundamental and must be personally waived by the defendant. *State v. Halseth*, 653 N.W.2d 782, 786 (Minn.App. 2002). The defendant may waive the right to a jury trial in writing or orally in court. Minn. R.Crim. P. 26.01, subd. 1(2)(a). Interpreting the rules of criminal procedure is a question of law subject to de novo review. *State v. Nerz*, 587 N.W.2d 23, 24–25 (Minn.1998).

 Minn. R.Crim. P. 26.01, subd. 1(2)(a), requires that the court advise the defendant of the right to a jury trial and the opportunity to consult counsel. The defendant must make the waiver voluntarily, knowingly, and intelligently. *State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991). The court is not obligated to make a searching inquiry as to why the defendant is waiving this right. *Id.* at 654. But the trial court should be certain that the defendant is adequately informed of his rights, and the court's caution in accepting the waiver must increase with the gravity of the offenses with which the defendant is charged. *Id.* at 653.

 When applying adult criminal rules to an EJJ proceeding, the district court should spend as much or more time with a juvenile than with an adult, satisfying itself

that any waiver of an essential right is proper and that the juvenile understands the consequences of the waiver. The record here shows that the appellant's counsel and the court both inquired into whether appellant understood every aspect of his right to a jury trial. This included an understanding of who decides the facts and who decides the law, that 12 jurors would decide his guilt, and an understanding of the requirement of a unanimous verdict. The record further reflects that appellant discussed this right with family and counsel, he was not coerced or unduly influenced to make the waiver, and he was of an age and maturity to understand the waiver.

Appellant argues that the court should have asked even more questions. We can only note that although you can "always ask more questions," there is nothing in the record that indicates that this was not an intelligent waiver. We cannot find any injustice, on these facts, by inferring an intelligent and voluntary waiver.

■ Appellant also contends that his waiver of an omnibus hearing is required to be on the record pursuant to Minn. R.Crim. P. 8.03. Although nothing in the record sheds light on whether appellant waived an omnibus hearing, respondent asserts that it is commonplace in bench trials to forego a separate omnibus hearing before a bench trial because the judge decides issues of both fact and law. Appellant has the better argument. Appellant points out that even if that be so, a record should be made that by agreement there will be no pre-bench-trial omnibus hearing and both sides agree that evidentiary issues will be folded into the trial. No such record was made here. The EJJ rules do not point to Minnesota Rules of Criminal Procedure for omnibus-hearing requirements as they do for jury-trial requirements. We hold that it is the better

practice in an EJJ bench trial to have the waiver of an omnibus hearing specifically on the record. But again, on these facts, we cannot find that the lack of a specific waiver of an omnibus hearing on the record mandates reversal.

## II.

■ Next, appellant argues that he did not waive his right to testify in his defense, but if he did, the waiver was improper. A defendant's decision to testify on his or her own behalf is a fundamental constitutional right. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983). The waiver of the right to testify must be knowing and voluntary. *State v. Walen*, 563 N.W.2d 742, 751 (Minn.1997). If the record is silent on waiver, the reviewing court presumes "the decision not to testify was made . . . voluntarily and intelligently." *State v. Smith*, 299 N.W.2d 504, 506 (Minn.1980). As with the previous issue, interpreting the rules of criminal procedure is a question of law subject to de novo review. *Nerz*, 587 N.W.2d at 24–25.

Here, the record is silent regarding whether appellant waived his right to testify, and appellant is presumed to have personally waived his right to testify. This is distinct from a trial on stipulated facts in which the waiver to testify must be in writing or on the record. *Halseth*, 653 N.W.2d at 786. This trial was not on stipulated facts.

## III.

■ Appellant argues that the admission of show-up evidence violated his due-process rights to a fair trial. Whether show-up evidence must be suppressed depends on the reliability of the identifications. *State v. Taylor*, 594 N.W.2d 158, 161 (Minn.1999). A two-part test is applied to determine reliability. *Id.* First, the proce-

dure producing the identification is evaluated to determine if it was unnecessarily suggestive. *Id.* Second, if the procedure is unnecessarily suggestive, the court then considers whether the totality of the circumstances created a substantial probability that the defendant was misidentified. *Id.* The police presenting to the victim a singled-out, handcuffed suspect may be unnecessarily suggestive. *Id.* at 162.

▬▬▬ Absent corroboration, eyewitness identification based on "fleeting or limited observation" should not be the basis for conviction. *State v. Spann,* 287 N.W.2d 406, 407–08 (Minn.1979). The court then looks to five factors to determine whether there was a substantial probability of misidentification: (1) the witnesses' view of the criminal at the time of the crime, (2) the witnesses' degree of attention, (3) the accuracy of the witnesses' descriptions, (4) the level of certainty of the witnesses when the identification was made, and (5) the time between the crime and the identification. *State v. Ostrem,* 535 N.W.2d 916, 921 (Minn.1995).

Here, appellant was singled out and presented by the police in handcuffs to the victim for identification. That fact undercuts the weight to be given the identification and taints the identification. Also, we note that the victim could not identify appellant as one of her attackers, but could identify appellant's orange Astros jersey as the one she saw on a person fleeing the crime scene. The other witnesses corroborated her identification of appellant as the person wearing the orange Astros jersey. The one-man show up of the defendant in handcuffs was unnecessarily suggestive. But the combined testimony of all the witnesses, including police officer Dale, and the fairly consistent testimony about the jersey present the solid circumstantial chain of evidence leading from appellant fleeing the scene back to Q.A. and the

person who attacked her. We do not find a perfect identification procedure, but we do not find reversible error in the trial court considering the eyewitness identification as part of the evidence supporting the conviction.

There is support in the record for the witnesses' identification of the Astros jersey. Two witnesses at the scene and the fortunate circumstance of a police officer near enough to the scene to effectively detain the defendant quickly facilitated identification and corroborated the victim's memory.

Between the Astros jersey, the corroboration of the victim's memory by witnesses, and the short interval between the time of the crime and identification, the admission of identification of evidence of appellant was not clearly erroneous.

## IV.

▬▬▬ Finally, appellant argues that the evidence was insufficient to support the district court's determination of guilt. In reviewing the sufficiency of the evidence the court applies the same standard to bench and jury trials. *State v. Cox,* 278 N.W.2d 62, 65 (Minn.1979). The sufficiency standard is that the reviewing court views the evidence in the light most favorable to the state and decides whether the fact-finder could have reasonably found the defendant guilty. *Id.* When the evidence is circumstantial, it must form a complete chain that, viewed as a whole, leads so directly to the guilt of the defendant as to exclude any reasonable inference of doubt of guilt. *State v. Jones,* 516 N.W.2d 545, 549 (Minn.1994). The factual findings of the district court are upheld unless clearly erroneous. *State v. Williams,* 535 N.W.2d 277, 286 (Minn. 1995).

The circumstantial evidence was, when viewed as a whole, sufficient to exclude any rational hypothesis of innocence. The court found that the identification evidence was reliable enough to support a conviction. The show-up identification of the defendant was the link in the circumstantial chain that the appellant argues was incomplete. As we have determined, the admission of the show-up evidence was not clearly erroneous, not because it was not tainted, but because the totality of the facts surrounding the apprehension and arrest of appellant, including the testimony of all the on-scene witnesses, validates the admissibility of the victim's eye-witness identification.

## DECISION

The record shows that appellant was adequately informed of his right to a jury trial, his right to an omnibus hearing, and his right to testify on his own behalf. The record shows an adequate waiver by appellant of those rights. The identification evidence and the circumstantial evidence were sufficient to support the conviction.

**Affirmed.**