STATE of Minnesota, Respondent,

v.

Michael Wallace MITCHELL,
Appellant.

No. A03–110.

Court of Appeals of Minnesota.

Oct. 12, 2004.

John M. Stuart, State Public Defender, Suzanne M. Senecal–Hill, Assistant State Public Defender, Minneapolis, MN, for Appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Larry M. Collins, Waseca County Attorney, Patrick M. Moen, Assistant County Attorney, Waseca, MN, for Respondent.

Considered and decided by WRIGHT, Presiding Judge; RANDALL, Judge; and KALITOWSKI, Judge.

## OPINION

WRIGHT, Judge.

Appellant challenges his conviction for felony theft, arguing that the state's evidence was insufficient to support his conviction and that the district court abused its discretion in ruling that appellant's three prior burglary convictions could be used for impeachment. Appellant also argues that his Sixth Amendment right to a jury trial was violated when the district court imposed a sentence that was an upward durational departure under the career-offender statute, because the sentencing judge, not a jury, found that appellant had five or more prior felony convictions and that his offense was part of a pattern of criminal conduct. We affirm in part, vacate in part, and remand.

## FACTS

At approximately 7:00 a.m. on September 27, 2002, Martin County Deputy Sheriff Charles Poppe was dispatched to an accident near Dunnell. On the scene, Poppe observed in a ditch an unlicensed van with a trailer in tow. Poppe identified the driver as appellant Michael Mitchell. The trailer had Minnesota license plates, but the rest of Mitchell's registration information indicated that he was from Iowa. Poppe determined from a records check that the trailer belonged to Ag Power Enterprises, a utility company in Waseca. When questioned about the trailer, Mitchell said that he had recently acquired it from a friend. Mitchell reached for a piece of paper behind the driver's seat, indicating that he had a receipt for the trailer. For safety reasons, Poppe directed Mitchell to leave the paper where it was. Without any indication that the trailer was stolen, Poppe permitted Mitchell to leave the scene.

Later that morning, the Waseca Police Department received a report that a utility

trailer had been stolen from Ag Power Enterprises' lot sometime after 6:30 p.m. on September 26. Officer Larry Thornhill responded to investigate the theft around noon on September 27. When Thornhill typed in the license-plate number of the stolen trailer, he received a message that Martin County law enforcement officials had encountered the trailer earlier that day. Thornhill contacted Poppe, who provided a description of Mitchell and the van. Mitchell was arrested a few days later.

Waseca County filed a complaint charging Mitchell with theft, in violation of Minn.Stat. § 609.52, subd. 2(1) (2002). Prior to trial, the state moved to impeach Mitchell with three burglary convictions. The district court granted the motion over Mitchell's objection. Following the state's case, Mitchell chose not to testify to preclude impeachment. The jury found Mitchell guilty of felony theft. The presumptive guideline sentence for Mitchell was an executed sentence of 21 months' imprisonment. The district court imposed a sentence of 42 months' imprisonment under the career-offender statute, Minn. Stat. § 609.1095, subd. 4 (2002), after finding that Mitchell had five or more prior felony convictions and that the present offense was committed as part of a pattern of criminal conduct. This appeal followed. After the case was submitted, the United States Supreme Court released its opinion in *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We granted Mitchell's motion to challenge his sentence on direct appeal and accepted supplemental briefing by the parties to address the impact of the *Blakely* decision, if any, on the sentence imposed.

## ISSUES

I. Is the evidence sufficient to support the conviction of felony theft?

II. Did the district court abuse its discretion in ruling appellant's prior convictions admissible for impeachment purposes?

III. Does the upward departure under the career-offender statute violate appellant's constitutional right to a jury trial?

## ANALYSIS

### I.

In considering a claim of insufficient evidence, our review is limited to a careful analysis of the record to determine whether the jury, giving due regard to the presumption of innocence and the state's burden of proof, could reasonably find the defendant guilty. *State v. Webb*, 440 N.W.2d 426, 430 (Minn.1989). We view the evidence in the light most favorable to the conviction, assuming the jury believed the evidence supporting the verdict and disbelieved any evidence to the contrary. *State v. Moore*, 438 N.W.2d 101, 108 (Minn.1989). It is the exclusive province of the jury to determine the weight and credibility to be afforded the testimony of each witness. *State v. Folkers*, 581 N.W.2d 321, 327 (Minn.1998).

"Circumstantial evidence is given the same weight as any other evidence as long as the circumstances proved are consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *State v. Pirsig*, 670 N.W.2d 610, 614 (Minn. App.2003), *review denied* (Minn. Jan. 20, 2004). To successfully challenge a conviction based solely on circumstantial evidence, an appellant must establish the existence of evidence in the record that is consistent with a rational theory other than guilt. *Id.* "[P]ossibilities of innocence do not require reversal of a jury verdict so long as the evidence taken as a whole makes such theories seem unreasonable."

*State v. Ostrem*, 535 N.W.2d 916, 923 (Minn.1995).

A person who "intentionally and without claim of right takes, uses, transfers, conceals or retains possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property" is guilty of theft. Minn.Stat. § 609.52, subd. 2(1) (2002).

■ Contending that the state failed to prove beyond a reasonable doubt that he "stole the trailer" in Waseca County, Mitchell argues that "the state's case boiled down to one piece of circumstantial evidence: [Mitchell] had the trailer in a neighboring county approximately 13 hours after the trailer was last seen at Ag Power." Our review of the evidence as a whole leads us to conclude that the circumstantial evidence of Mitchell's guilt is strong and "inconsistent with any *rational* hypothesis except that of guilt." *Pirsig*, 670 N.W.2d at 614 (emphasis added). Employees from Ag Power testified that the trailer was stolen from Ag Power's lot in Waseca. Poppe and Thornhill testified that Mitchell was towing the trailer hours after it was stolen. And during his booking, Mitchell admitted possessing the stolen trailer. This evidence is entirely circumstantial. But, without more, Mitchell's bald assertion during the booking that he purchased the trailer for $100 from "a friend" constitutes an implausible theory of innocence in light of the vagueness of Mitchell's explanation, the time frame between the theft and Poppe's encounter with Mitchell, Mitchell's unemployment and homeless condition, and his claim to be traveling without any cash, checks, credit cards, or access to money. Based on the evidence as a whole, the jury reasonably could find Mitchell guilty of theft. Mitchell's challenge to the sufficiency of the evidence, therefore, fails.

## II.

■ Mitchell next argues that the district court abused its discretion when it granted the state's motion to admit for impeachment purposes three prior burglary convictions without making explicit findings as to the application of the *Jones* factors. *See State v. Jones*, 271 N.W.2d 534, 537–38 (Minn.1978) (establishing five factor test to determine whether to admit prior convictions). Evidentiary rulings rest within the district court's discretion and will not be disturbed in the absence of a clear abuse of discretion. *State v. Ihnot*, 575 N.W.2d 581, 584 (Minn.1998). Evidence of a witness's prior convictions is admissible for impeachment if the crime is a felony and the district court determines that the probative value of admitting this evidence outweighs its prejudicial effect. Minn. R. Evid. 609(a)(1). "[I]mpeachment by prior crime aids the jury by allowing it to see the whole person and thus to judge better the truth of his testimony." *State v. Gassler*, 505 N.W.2d 62, 67 (Minn.1993) (quotations omitted).

■■ To determine whether the probative value of a defendant's prior conviction outweighs its prejudicial effect, courts consider the following factors: (1) the impeachment value of the prior crime, (2) the date of the conviction and the defendant's subsequent history, (3) the similarity of the past crime and the charged crime (the greater the similarity, the greater the reason for not permitting use of the prior crime to impeach), (4) the importance of the defendant's testimony, and (5) the centrality of credibility as an issue. *Jones*, 271 N.W.2d at 537–38; *see also Ihnot*, 575 N.W.2d at 586 (reaffirming application of the *Jones* factors to determine whether probative value outweighs prejudicial effect). If the evidence of the prior conviction could have been admitted after a

proper application of the *Jones* factors, the district court's failure to make explicit findings as to these factors is harmless error. *State v. Vanhouse*, 634 N.W.2d 715, 719 (Minn.App.2001), *review denied* (Minn. Dec. 11, 2001).

Here, the state moved to impeach Mitchell with three 1992 felony burglary convictions. The district court granted the state's motion, allowing the impeachment evidence to be presented if Mitchell testified. But the district court did not make explicit findings as to the *Jones* factors. Because of the district court's evidentiary ruling, Mitchell elected not to testify.

■ Our independent application of the *Jones* factors supports the district court's determination that the impeachment evidence was more probative than prejudicial. Although the crimes did not directly involve dishonesty, they are probative of Mitchell's credibility and would have assisted the jury in assessing his credibility. *See State v. Ross*, 491 N.W.2d 658, 659 (Minn.1992) (finding burglary conviction admissible under 609(a)(1) even though not a crime of dishonesty). Thus, the first factor weighs in favor of admitting the impeachment evidence.

Evidence of conviction is not admissible if more than ten years have elapsed since the date of the conviction or since the date of release from confinement for the conviction. Minn. R. Evid. 609(b). Mitchell was convicted of the relevant offenses in 1992 and released from prison in October 2000, two years prior to the trailer theft. Thus, Mitchell's convictions were not "stale" under Rule 609. And that he was in prison until shortly before the instant offense supports the conclusion that the probative value of the offenses had not diminished by the passage of time. *See Gassler*, 505 N.W.2d at 67 (finding that prior offense had not lost relevance due to passage of

time). Accordingly, this factor weighs heavily in favor of admission.

Next, we note that burglary is an acquisitive crime, similar in nature to theft. *Ross*, 491 N.W.2d at 660. Although the similarity of the prior offenses and the charged offense does not preclude their admissibility for impeachment, this factor weighs against admission. *State v. Bias*, 419 N.W.2d 480, 487 (Minn.1988).

Finally, in examining the importance of a defendant's testimony and the centrality of its credibility, we consider that Mitchell's version of the facts was heard by the jury, notwithstanding his decision to refrain from testifying. Mitchell did not proffer any additional evidence that he would have presented had he testified. Moreover, because the jury was required to choose between Mitchell's version of events and the evidence offered by the state, Mitchell's credibility was a central issue in the case. Had he testified, the need for impeachment evidence would have been significant. *See Gassler*, 505 N.W.2d at 67; *State v. Bettin*, 295 N.W.2d 542, 546 (Minn.1980). These factors, therefore, weigh in favor of admission.

■ Because four of five *Jones* factors weigh in favor of admitting the impeachment evidence, the district court did not abuse its discretion in determining that the evidence was more probative than prejudicial. In light of this conclusion, the district court's failure to make explicit findings as to the *Jones* factors was harmless error.

### III.

Mitchell was sentenced under the career-offender statute to a double upward durational departure from 21 to 42 months' imprisonment. To be sentenced under the career-offender statute, the offender must have "five or more prior felony convictions" and must have committed the pres-

ent offense as part of a "pattern of criminal conduct." Minn.Stat. § 609.1095, subd. 4 (2002). Mitchell has 12 prior felony offenses, calculated according to the sentencing guidelines, which limit prior offenses to those for which the sentence has expired or the offender has been discharged within the last 15 years. *See* Minn. Sent. Guidelines II.B.1.e. Many of Mitchell's convictions were sentenced at the same time. But when his 1974 and 1980 convictions are counted (because sentencing calculations under the career-offender statute are not limited by the sentencing guidelines' 15-year "look-back" provision), Mitchell has five prior sequential felony convictions as required by the career-offender statute. *See State v. Huston*, 616 N.W.2d 282, 284 (Minn.App.2000) (interpreting career-offender statute to require five separate and sequential convictions).

Mitchell argues that, under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the double departure violates his Sixth Amendment right to a jury determination of all facts essential to the punishment. Mitchell concedes that his criminal history is a factor that *Blakely* and preceding cases allow the sentencing judge, rather than the jury, to determine. *See Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000) (holding fact of prior conviction may be determined by a judge). But he argues that the determination that those offenses were committed as part of a "pattern of criminal conduct" does not fall within that exception.

As an initial matter, we note that the career-offender statute establishes a "legislatively-created ground" for departure. *State v. Rachuy*, 502 N.W.2d 51, 52 (Minn. 1993). The statute does not rely on grounds for departure administratively established by the Sentencing Guidelines Commission. Thus, in applying *Blakely* to

the career-offender departure at issue here, we need not address the broader question of whether *Blakely* applies to the Minnesota Sentencing Guidelines. We are mindful that some courts have considered the use of the term "statutory maximum" in *Blakely*, carried over from the *Apprendi* opinion, and have concluded that *Blakely* does not apply to administratively created sentencing guidelines schemes, such as the federal sentencing guidelines. *See United States v. Hammoud*, 381 F.3d 316 (4th Cir.2004). But since the upward departure at issue here results from a true "statutory" sentencing enhancement, the distinction drawn in *Hammoud* need not be addressed here.

The career-offender statute provides that, when a judge is imposing an executed sentence, and execution is the presumptive disposition, the judge "may impose an aggravated durational departure from the presumptive sentence up to the statutory maximum sentence" after finding (1) five or more prior felony convictions and (2) a "pattern of criminal conduct." Minn.Stat. § 609.1095, subd. 4. A "pattern of criminal conduct" refers to "acts related to one another through a common scheme or plan or shared criminal purpose." *State v. Gorman*, 546 N.W.2d 5, 9 (Minn.1996) (quoting Minn.Stat. § 609.902, subd. 6(3)(i) (1994), Minnesota Racketeer Influenced and Corrupt Organizations (RICO) statute). The pattern may be shown by "proof of criminal conduct similar, but not identical, in motive, purpose, results, participants, victims or other shared characteristics." *Id.*

Determining whether a conviction is part of a "pattern of criminal conduct" involves a comparison of different criminal acts, weighing the degree to which those acts are sufficiently similar with respect to any of the characteristics listed in *Gorman*. This determination goes beyond a

mere determination as to the fact, or number, of the offender's prior convictions, which judges are permitted to make without violating the Sixth Amendment jury-trial right.

■ The *Apprendi* court emphasized that the "prior conviction" recidivism factor is a "narrow exception" to the general rule that all facts essential to the maximum punishment must be found by the jury. 530 U.S. at 491, 120 S.Ct. at 2362. This exception is justified in part by "the certainty [of] procedural safeguards attached to any 'fact' of prior conviction." *Id.* at 488, 120 S.Ct. at 2362. The bare fact of a prior conviction, however, does not establish the motive behind the crime, its purpose, results, participants, or victims. As to those aspects of the prior conviction, so essential to the determination of a "pattern of criminal conduct" under *Gorman,* the earlier criminal prosecution has provided no "procedural safeguards." We, therefore, conclude that the career-offender statute's finding of "pattern of criminal conduct" is beyond the scope of the recidivism exception recognized in *Apprendi*. Because the sentencing judge, not a jury, determined facts other than the fact of Mitchell's prior convictions, which were essential to Mitchell receiving an enhanced sentence under the career-offender statute, the sentence was imposed in violation of the Sixth Amendment. Accordingly, we vacate the sentence imposed and remand for resentencing in a manner not inconsistent with this opinion.

## DECISION

The evidence is sufficient to support appellant's conviction for felony theft. The district court did not abuse its discretion in ruling that appellant could be impeached with his prior burglary convictions. The district court's imposition of an upward

departure under the career-offender statute based on judicial findings, however, violated appellant's Sixth Amendment right to a jury determination of all facts essential to his punishment.

**Affirmed in part, vacated in part, and remanded.**