**STATE of Minnesota, Respondent,**

v.

**Auginaldo Leon ADKINS, Appellant.**

**No. A04–1692.**

Court of Appeals of Minnesota.

Nov. 22, 2005.

Mike Hatch, Attorney General; and Susan Gaertner, Ramsey County Attorney, Darrell C. Hill, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Sara L. Martin, Assistant Public Defender, Minneapolis, MN, for appellant.

Considered and decided by STONEBURNER, Presiding Judge; PETERSON, Judge; and HALBROOKS, Judge.

## OPINION

STONEBURNER, Judge.

Appellant challenges his conviction of first-degree burglary, arguing that the district court erred by denying his motion to suppress identification evidence. He also asserts that the district court erroneously sentenced him as a career offender in violation of his right to a jury determination of aggravating sentencing factors. Because the totality of the circumstances demonstrates that the identification had adequate independent origin and was reliable, the district court did not err by denying appellant's motion to suppress, and we affirm the conviction. Because sentencing under the career-offender statute violated appellant's Sixth Amendment rights, we reverse the sentence imposed and remand for resentencing consistent with this opinion.

## FACTS

Fifteen-year-old K.L. was home from school with a sore throat, sleeping in his attic bedroom. He woke up when he heard a loud noise and went downstairs to investigate. He pried apart slats of a door that separated the stairs from the living room and saw an African–American man walking around. K.L. watched the man walk into the kitchen, reenter the living room, and walk to the picture window where he unzipped a hockey-referee bag owned by K.L.'s father and looked inside. The man then walked down the hall toward a bedroom, returned to K.L.'s view, and approached the door K.L. was behind. As the man came toward K.L., K.L. pushed the door open. K.L. and the man stood face-to-face for a couple of seconds, then the man ran out of the house. K.L. called his father who called the police.

Officers Prust and Molina responded to the call of "interrupted burglary." On their way to the residence, the officers received information from a dispatcher that the suspect was an older African–American man who had "larger lips and larger ears," and who was wearing a large coat. The officers saw only one pedestrian in the area, an African–American man in a dark coat. Prust thought that the man they saw was probably the intruder.

The officers discovered that the back door of K.L.'s home had been kicked in and part of the frame had fallen down. There was a footprint on the door and footprints in the snow leading to the residence.[1] Twenty-five minutes later, Officer Nelson radioed that he had stopped a suspect (appellant) about a mile from the residence. Prust and Molina took K.L. to the scene of the stop for a "show-up" identification. They told K.L. that they had stopped someone, and they wanted K.L. to look at the person to see if K.L. could identify him. They parked 50 to 120 feet from the squad car in which the suspect was seated and used a P.A. system to ask Nelson to remove appellant from Nelson's squad car. Appellant, who was handcuffed, was taken out of the car and ordered to turn around slowly. K.L., who viewed appellant through a window in the squad car in which he was seated with

---

1. At the scene of the show-up identification, Officer Molina recognized that the tread on appellant's shoes matched the footprints at K.L.'s home.

Prust and Molina, immediately identified appellant as the intruder. Prust and Molina recognized appellant as the man they had seen on their way to K.L.'s residence.

Appellant was charged with first-degree burglary. Appellant moved to suppress K.L.'s identification as unreliable, pointing out some variations in K.L.'s description of the intruder before and after the show-up identification. The district court denied the motion, finding that although the show-up identification was unnecessarily suggestive, under the totality of the circumstances there was no substantial likelihood of misidentification.

A jury found appellant guilty. The state moved for an upward sentencing departure under Minn.Stat. § 609.1095, subd. 4 (2004). Based on appellant's prior felony convictions, including eight burglary-related convictions, the district court found that the current offense was committed as part of a pattern of criminal conduct and sentenced appellant under Minn.Stat. § 609.1095, subd. 4 (2004), to a term of 96 months, an upward departure from the presumptive sentence. This appeal followed.

### ISSUES

I. Did the district court err by denying appellant's motion to suppress identification evidence?

II. Did sentencing under Minn.Stat. § 609.1095, subd. 4 (2004), based on a judicial finding that the present offense was committed as part of a pattern of criminal conduct, violate appellant's Sixth Amendment right to trial by jury?

III. Is Minn.Stat. § 609.1095, subd. 4, unconstitutional?

### ANALYSIS

**I. Identification evidence**

 When the facts are not in dispute, pretrial suppression issues are reviewed de novo to determine whether the district court erred in its decision. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). Identification evidence is only admissible if it is reliable. *State v. Taylor*, 594 N.W.2d 158, 161 (Minn.1999). The ultimate concern is whether police conduct may have influenced a witness's identification. *State v. Anderson*, 657 N.W.2d 846, 850 (Minn. App.2002). To determine whether an identification procedure violated a defendant's right to due process, Minnesota applies the two-part test articulated in *Manson v. Brathwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977). *Taylor*, 594 N.W.2d at 161. The court first decides whether the procedure was unduly suggestive and if so, next determines whether, in light of the totality of the circumstances, the identification was nonetheless reliable. *Id.* If the procedure was unduly suggestive, the identification evidence may only be admitted if, under the totality of the circumstances, the identification "has adequate independent origin" and is therefore reliable despite the unnecessarily suggestive procedure. *State v. Ostrem*, 535 N.W.2d 916, 921 (Minn.1995).

 The district court found, and the parties do not dispute, that the show-up identification procedure used in this case was unnecessarily suggestive. *See Taylor*, 594 N.W.2d at 161–62 (stating that a one-person show-up is by its very nature suggestive, although not per se unnecessarily suggestive). Appellant argues that under the totality of the circumstances, K.L.'s identification was unreliable. To evaluate the likelihood of irreparable misidentification, courts consider five factors:

1) The opportunity of the witness to view the suspect at the time of the crime;

2) The witness's degree of attention;

3) The accuracy of the witness's prior description of the suspect;

4) The level of certainty demonstrated by the witness at the confrontation; and

5) The time between the crime and the confrontation.

*Ostrem*, 535 N.W.2d at 921. The district court made specific findings as to each factor, finding that (1) K.L. had sufficient opportunity to view appellant during commission of the crime; (2) K.L. was coherent, aware, and attentive during his observation of the intruder; (3) there was no substantial difference between K.L.'s descriptions of the intruder before and after the show-up; (4) K.L.'s identification was certain; and (5) the time between the crime and the identification was minimal. The record supports the findings, and the findings support the conclusions that the identification had adequate independent origin and there was not a substantial likelihood of irreparable misidentification.

Appellant argues that even if the identification would be admissible under the traditionally applied standard, this court should reject that standard for evaluating out-of-court identifications and adopt a *per se* rule excluding identification evidence obtained through suggestive procedures. Appellant cites "recent scientific research" and nonjurisdictional cases in support of this request to change existing law in Minnesota. But we are an error-correcting court and it is not the role of this court to abolish established judicial precedent. *St. Aubin v. Burke*, 434 N.W.2d 282, 284 (Minn.App.1989) (stating, in context of rejecting adoption of discovery rule to trigger statute of limitations in medical-malpractice actions, "[i]t is not our role to abolish nearly 60 years of established judicial precedent"), *review denied* (Minn. Mar. 29, 1989). Under the existing standard for evaluating out-of-court identifications, the district court did not err in denying appellant's motion to suppress the identification.

## II. Sentencing

 The state argues that appellant waived his right to raise a *Blakely* challenge because no objection was made in the district court to sentencing under the career-offender statute. Waiver of a constitutional right must be knowing, voluntary, and intelligent, and waiver of the right to a jury trial requires that a defendant have knowledge of that right. *State v. Hagen*, 690 N.W.2d 155, 158–59 (Minn. App.2004). Appellant was sentenced approximately 14 days before the *Blakely* opinion was released and therefore could not have made a knowing, voluntary, and intelligent waiver of his right to a jury determination of facts supporting the departure.

 Minn.Stat. § 609.1095, subd. 4 (2004) (the career-offender statute) permits an upward departure from the presumptive sentence "if the judge finds and specifies on the record that the offender has five or more prior felony convictions and that the present offense is a felony that was committed as part of a pattern of criminal conduct." Based on the district court's determination that appellant met the statutory criteria, appellant was sentenced to an upward departure from the presumptive sentence for first-degree burglary. Appellant asserts that the sentence violated his Sixth Amendment right to a jury determination of aggravating sentencing factors other than the fact of a prior conviction as recognized in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 2537, 159 L.Ed.2d 403 (2004). *See State v. Mitchell*, 687 N.W.2d 393, 400 (Minn.App. 2004) (noting that determining whether a conviction is part of a "pattern of criminal conduct" goes beyond a mere determination as to the fact, or number, of prior

convictions, which judges are permitted to make without violating the Sixth Amendment jury-trial right, and holding that sentencing under the career-offender statute violates a defendant's Sixth Amendment right to a jury determination of factors that increase a sentence above the recommended guidelines announced in *Blakely* ), *review granted* (Minn. Dec. 22, 2004).

The state argues that *Mitchell* is distinguishable from the instant case because *Mitchell* involved a comparison of different criminal acts, and weighed the degree to which the acts were similar with respect to a pattern of criminal conduct. In contrast, the state argues, when, as in this case, a pattern of criminal conduct exists on the face of a defendant's prior convictions, the finding of a pattern of criminal conduct is required, and *Blakely* is not implicated.[2] But the recently released opinion in *State v. Shattuck*, 704 N.W.2d 131 (Minn. Aug.18, 2005) (as modified by Order of October 6, 2005), compels us to examine whether the 2004 career-offender statute remains available to support this upward departure.

## III. Constitutionality of career-offender statute

■ In *Shattuck*, the supreme court held that the imposition of an upward durational sentencing departure under Minn. Stat. § 609.109, subd. 4 (2004), violated Shattuck's Sixth Amendment right to a jury trial. *Id.*, 704 N.W.2d 131 (as modi-

fied by Order October 6, 2005). The supreme court stated:

> Because section 609.109, subdivision 4 ... authorize[s] the district court to make ... an unconstitutional upward durational departure upon finding an aggravating factor without the aid of a jury, we hold that the statute is facially unconstitutional and section II.D of the guidelines is unconstitutional as applied.

*Id.* Section 609.109, subd. 4, like the career-offender statute at issue in this case, authorized an upward departure based on a judicial determination at the time of sentencing about the nature of the crime for which sentence was being imposed. We therefore conclude that Minn.Stat. § 609.1095, subd. 4 (2004), is unconstitutional to the extent that it authorizes a judicial finding that a pattern of criminal conduct exists.[3] Because the statute is unconstitutional as applied to appellant's sentence, we reverse the sentence imposed.

The state argues that the failure to submit the "pattern of criminal conduct" issue to a jury must be reviewed under a plain-error analysis, citing *United States v. Cotton*, 535 U.S. 625, 634, 122 S.Ct. 1781, 1787, 152 L.Ed.2d 860 (2002) (holding that a constitutional right may be forfeited by failure to timely assert the right), and *United States v. Booker*, 543 U.S. 220, ——, 125 S.Ct. 738, 769, 160 L.Ed.2d 621 (2005) (stating that in reviewing *Blakely*

2. The state relies on an unpublished opinion, *State v. Henderson*, 2004 WL 1925395, No. A03–1898 (Minn.App. Aug.31, 2004), *review granted* (Minn. Nov. 23, 2004) for the proposition that a jury finding is unnecessary where the pattern of criminal conduct is evident from the face of prior convictions. But this court held that *Henderson* was implicitly overruled by *State v. Shattuck*, 689 N.W.2d 785, 786 (Minn.2004). *State v. Berry*, No. A04–1435, 2005 WL 1021374, at *3 (Minn.App. 2005), *review denied* (Minn. July 19, 2005).

3. The 2005 legislature amended section 609.1095, subd. 4, to provide for an upward durational sentencing departure based on a factfinder's determination of the conditions triggering upward sentencing departures under the statute. 2005 Minn. Laws. ch. 136, art. 16, § 12, at 1119. But the amendment became effective on August 1, 2005, and applies only "to crimes committed on or·after that date," *id.*, and therefore does not apply to appellant.

appeals, reviewing courts are expected to apply ordinary prudential doctrines including the plain-error test).

 Plain-error involves an analysis of whether there was "(1) error; (2) that is plain; and (3) the error must affect substantial rights." *State v. Griller,* 583 N.W.2d 736, 740 (Minn.1998). The state concedes that there was error that is plain in this case, but argues that because any factfinder would necessarily conclude from appellant's eight burglary-related convictions that the burglary for which appellant was being sentenced was part of a pattern of criminal behavior, appellant's substantial rights were not affected. Despite the appeal of this argument, and despite the language in *Booker* suggesting that plain-error applies to *Blakely* violations, we conclude that the constitutional right to have a jury decide any issues that will increase the duration of a sentence is, in itself, a substantial right.

Because Minn. Sent. Guidelines II. D.2.b.(9) lists as an aggravating factor on which an upward durational sentencing departure can be based that an "[o]ffender is a 'career offender'" and references Minn. Stat. § 609.1095, subd. 4, presumably for the definition of a "career offender," it is possible that the district court could have imposed the upward departure under the guidelines. The legislature has amended the guidelines statute to provide for sentencing juries to determine the existence of aggravating factors, and the amendment, made effective the day following en-

actment, applies both prospectively and to resentencing hearings. 2005 Minn. Laws. ch. 136, art. 16, § 4, at 1115. The supreme court has not expressed an opinion about these changes but in *Shattuck* did not "foreclose the district court from considering any constitutionally applicable and/or available laws on remand." *Shattuck,* 704 N.W.2d 131 (Minn.2005) (as modified by Order October 6, 2005). Likewise, we do not foreclose the district court from considering such laws on remand.

## DECISION

Because, under the totality of the circumstances, K.L.'s identification of appellant was reliable, the district court did not err in denying appellant's motion to suppress identification evidence. Because the career-offender statute, Minn.Stat. § 609.1095, subd. 4 (2004), is unconstitutional insofar as it permits a judicial determination of an aggravating factor beyond the recidivism exception recognized in *Apprendi,* we reverse the sentence imposed and remand for resentencing consistent with this opinion.

**Affirmed in part, reversed in part, and remanded.**